PHENIX INSURANCE CO. *v.* T. B. BOWDRE ET AL.

1. FIRE INSURANCE. *Proof of loss. Waiver. Authority of agent.*

Though an insurance agent acts within a limited territory, if this is under general appointment, "for transaction of the business of insurance in the state of Mississippi during the year," and he makes contracts, collects premiums, and countersigns and delivers policies, he is not a mere solicitor, but is a general agent of the company, and, after a loss, may by parol waive a condition requiring assured, within a certain time, as a part of the proofs of loss, to furnish a builder's estimate of the value of the building; and this although the policy provides that no waiver shall have effect unless in writing indorsed on the policy, and that no agent is authorized to make any waiver or modification. *Association* v. *Matthews*, 65 Miss. 301; *Rivara* v. *Ins. Co.*, 62 Ib. 728, cited.

2. SAME. *Title of assured. Sole beneficial ownership.*

Applicants for insurance are not called on to settle questions of title to land with precision. Where a policy provides that "if the interest of the assured in the property be other than an absolute fee-simple title it must be so represented to the company and expressed in the policy or it will be void," the condition will not affect the right of the assured to recover on the contract if he has the sole beneficial ownership of the property, although there may be technical defects in his deed or an outstanding naked legal title. *Ins. Co.* v. *McGuire*, 52 Miss. 227, cited.

FROM the circuit court of Tate county.

HON. W. M. ROGERS, Judge.

Appellees, T. B. and W. B. Bowdre, sued the Phenix Insurance Company, of Brooklyn, New York, on a policy issued May 17, 1888, insuring the residence of plaintiffs in Tate county, near Senatobia, Miss., against loss by fire to the amount of $2000. The building was burned September 6, 1888. The two defenses relied

upon by the company in this court are set forth in the opinion. It is not deemed necessary to state the others.

A provision of the policy required that notice should be given the company within six days after a loss, and, within thirty days further, that proofs of loss should be furnished, "and as a part of the preliminary proofs of loss, the assured shall . . . procure the duly verified certificate of some reliable and responsible builder in detail as to the actual cash value of such building immediately before said fire, which shall be attached to and form a part of such proofs."

Another condition of the policy is as follows: " It is understood and agreed that the agents of this company have no authority in any manner, or by any act or omission whatsoever, either before or after making this contract, to waive, alter, modify, strike from this policy, or otherwise to change any of its conditions or restrictions, except by distinct, specific agreement, clearly expressed and indorsed hereupon and signed by the agent making it. Nor shall silence upon receipt of notice of breach of any condition or restrictions herein, or failure to declare this policy forfeited thereby, or the issuance of any renewal or new policy, or the acceptance of any premium or other money, or any other act or omission whatsoever by any agent of this company, whether with or without knowledge of such breach, or whether before or after the making of this contract, work any waiver of such conditions or restrictions, or affect any estoppel against this company, or deprive it of any forfeiture or defense, either in law or in equity, to an action upon this policy."

The policy was countersigned and issued by one T. P. Hill, the agent of the company at Senatobia, who was provided with blank printed policies, signed by the president and secretary of the company. As was his custom, Hill made the contract of insurance, fixed the rate, received the premium, and issued to assured the policy, first filling in the written portions. All the particulars were communicated to the company in a daily report made by the agent at the time of issuing the policy. Said Hill had in his possession a certificate or commission showing his appointment as agent of said company, "with full power to receive proposals for insur-

ance against loss and damage by fire in Senatobia, Miss., and vicinity, to fix rates of premium, to receive moneys, and to countersign, issue, renew, and consent to the transfer of policies of insurance signed by the president or the secretary of the said Phenix Insurance Company, subject to the rules and regulations of said company, and to such instructions as may from time to time be given by its officers."

The above facts were shown in evidence on the trial, and the plaintiff introduced in evidence also a certified transcript from the auditor's office, showing that said T. P. Hill, of Senatobia, Tate county, was in the list of agents of said company appointed in the state, the certificate of appointment, signed by the president and secretary, being as follows: "This is to certify that the persons named in the following schedule have been duly appointed by the Phenix Insurance Company, of Brooklyn, New York, as its agents for the transaction of the business of insurance in the state of Mississippi during the year 1888." The filing in the auditor's office of this evidence of the appointment of agents by the non-resident insurance company was in pursuance of the requirements of the statute.

After the house was burned the appellant, T. B. Bowdre, applied to the agent Hill, who had issued the policy, and asked what he should do to collect the money. Hill told him that he would have to give him (Hill) notice of the loss, and wrote out the notice himself, addressed, "T. P. Hill, agent Phenix Ins. Co." This notice was signed by Bowdre and taken by Hill, who also informed the assured that he would have to make proof of loss, and copied from his book the form of proof which Bowdre re-copied and returned to him duly signed. Hill indicated some corrections which Bowdre made, after which Hill received the proof, pronounced it correct, and forwarded the same to the company. The proof so prepared under the direction of Hill did not contain a builder's estimate, as required by the policy, Hill stating that he did not consider such estimate necessary unless the company should call for it. The proof was delivered to Hill about the 22d of September, 1888, and he forwarded it to the general agent of the company at Chicago.

Meantime, after the fire, Bowdre had changed his post-office from Senatobia to Coldwater, but the general agent of the company was not notified of this.   On the 28th of September the general agent of the company wrote him a letter from Chicago, which was registered on the 29th, addressed to Senatobia, stating that the proof of loss had been received, but calling attention to the fact that it was defective by reason of the failure to send a builder's estimate. This estimate, it was said, was indispensable, and the general agent declined to receive the proof of loss without it.   This letter was not received by Bowdre until the time had about expired for furnishing the proof of loss.   But on September 29, he had, as a matter of caution, written the company again, sending a copy of the proof made under the direction of and corrected by Hill.   In this letter it was stated that the "written statement of the fire" had been given to "your agent here, Mr. T. P. Hill."   This letter was received at Chicago, October 4, but was not answered.   When Bowdre received the information that the builder's estimate was essential, he saw Hill, who still thought it unnecessary.   But Bowdre, after some difficulty, obtained one, and sent it to the general agent on October 23.   The mechanic who had built the house was sick, and hence there was a delay in obtaining the estimate, but it was forwarded about as soon as it could be obtained from him, though there were other mechanics in the vicinity.   On October 30, the general agent acknowledged receipt of the papers, but wrote that the time had expired before the corrected proof was received, and asserted the forfeiture of the policy on that ground.

Plaintiff, T. B. Bowdre, testified that he applied to the agent, Hill, to know what he should do after the loss, and that Hill, as such agent, assisted him in making out the proof of loss as above stated and accepted the same, saying it was all right and that no builder's estimate was necessary, and that for this reason none was furnished within the time limited.   He denied that the agent Hill told him he could do nothing in the matter of adjusting the loss as agent, and could only make suggestions as an individual ; denied dealing with Hill except as an agent of the company, and, as he supposed, with full power to accept the proof of loss and act for

the company. The agent, Hill, testified that after the loss he explained fully to Bowdre that as agent he could do nothing and could make no suggestions in the matter of adjusting the loss, and that he showed the assured a book of instructions, in which his duty as to this was explicitly stated; that what he did for Bowdre was as an individual, and this was expressly so understood, and that Bowdre promised not to let the fact be known that he (Hill) had aided him in preparing the proofs of loss. He informed Bowdre that the adjuster of the company would be there soon; that the adjuster sometimes waived the builder's estimate and might do so in this case. The book of directions was introduced in evidence, showing that after a loss an agent could take no action whatever except report it to the company. It was further shown that Hill had only acted as the agent of the company at Senatobia, and that he had never had anything to do with adjusting a loss: this was the first loss that had occurred since he had been agent. He testified that he was a mere local agent of the company, and had no authority except such as was given in his commission, and exercised none.

One Weems, a witness for defendant, testified to being present at a conversation between Bowdre and Hill when the latter examined the house preparatory to issuing the policy, when Bowdre asked the agent if he would get his money from him in the event the house burned, when Hill answered no, that he would put him in a good company, and would have nothing more to do with it.

On the question of title it was shown that under a devise by one Merriwether, grandfather of plaintiffs, the executors of his will had bought the land upon which the residence was afterwards built, taking the title in themselves for the benefit of plaintiffs and their brothers and sisters, seven in all; and the will directed that the property or its proceeds should be divided between these children when the youngest arrived at age. They lived on the land until that time. Meantime V. M. Bowdre, one of the owners, conveyed his interest to the plaintiff, W. B. Bowdre. The other six owners then gave a power of attorney to one Ward to sell the land for division of the proceeds, and he sold it to the plaintiffs, who paid

the purchase-money and received from Ward a deed. The house that was originally on the place was destroyed by fire, and plaintiffs, after buying the interest of the other owners, built another residence, the one that was covered by the policy of insurance. The deed from Ward did not recite all the facts which induced its execution, but it conveyed the fee and was signed, "N. Ward, Att'y." One of the executors of Merriwether was shown to be living, and the naked legal title had never been divested out of him.

On these facts the court instructed the jury that plaintiffs were the owners of the property within the meaning of the fourth condition of the policy, which provided that if the interest of the assured was other than the "absolute fee simple title," or if any other person had any interest, the fact should be represented to the company and expressed in the policy, otherwise it would be void.

The court also instructed the jury, in effect, that if what Hill did after the loss was done by him as an individual and not as an agent, and that he so informed Bowdre, then the company was not bound by his acts.

The court also instructed the jury, by plaintiffs' second charge, that if Hill was agent of the defendant and did not deny that he was acting as such, and did not notify Bowdre of any limitations on his authority, but so acted as to induce a man of ordinary intelligence, unlearned as to insurance, to believe that the proof as delivered was sufficient, then nothing more was required of the assured until notified that additional proof was necessary; and if, after such notice, the additional proof was made within such reasonable time as the circumstances admitted, although after thirty days, this was sufficient.

The following instruction asked by the defendant was refused:

"15. If the jury believe from the evidence that T. P. Hill was agent for defendant to receive applications for insurance, take risks, settle rates of premium and issue policies, but not the agent of defendant to accept and pass upon the sufficiency of proofs of loss, or to agree with the assured as to the amounts to be paid thereon; and that the said Hill did not accept and pass upon the sufficiency of proofs of loss or agree with persons assured by defendant as to

67 MISS.—40

sums due for losses sustained ; or, in case the said Hill did accept and pass upon the sufficiency of proofs of loss or agree with persons sustaining loss as to the sums due them, he did not do this with the consent and approval of defendant, then defendant is not bound by any statements of the said Hill, if the jury believe from the evidence he made any statements as to what proofs of loss were not necessary to be made by the said plaintiffs."

The jury found for the plaintiffs the full amount of the policy with interest, and judgment was entered accordingly. After motion for a new trial overruled, defendant appealed. The opinion of the court contains a further statement of the case.

*Shands & Johnson,* for appellant.

1. The title of plaintiffs to the property insured was insufficient. The deed from Ward does not show that it was executed in pursuance of a power of attorney. 2 Washb. R. Prop., 608 ; 3 Ib., 249 ; Code 1880, § 1180.

Plaintiffs only had an equity at best. Not having the absolute fee-simple title, the policy was void. Wood's Fire Ins., §§ 88, 233, 292 ; Ib., p. 409, and cases cited ; *Hough* v. *Ins. Co.,* 29 Conn. 10 ; 10 Fed. R. 232 ; 10 Pick. (Mass.) 507 ; 7 Gray, 265, 370 ; 62 N. Y. 47 ; 6 Gray, 186 ; 112 Mass. 136 ; 9 Cush. (Mass.) 490 ; 12 Ib. 366.

2. Plaintiffs cannot recover because they failed to furnish a builder's estimate as a part of the proof of the loss within the time required by the policy. The requirement as to this must be strictly complied with. Wood's Fire Ins., §§ 436, 437, 438 ; *Ins. Co.* v. *Sorsby,* 60 Miss. 302 ; *Ins. Co.* v. *Deford,* 38 Md. 400 ; *Ins. Co.* v. *Carpenter,* 4 Wis. 25 ; *Ins. Co.* v. *Beaty,* 66 Pa. St. 9 ; *Cornell* v. *Ins. Co.,* 18 Wis. 387 ; *Blossom* v. *Ins. Co.,* 64 N. Y. 162 ; *Ins. Co.* v. *Frick,* 29 Ohio St. 466 ; 57 Barb. (N. Y.) 521 ; 67 Ib. 595.

3. Plaintiffs are not entitled to recover on the ground of the alleged waiver. In the first place, Hill was a mere local agent and had no authority to make any such waiver. The burden of proof to show his authority was on plaintiffs. They were bound to know the limits of his authority. On this point, see Story on

Agency, §§ 72, 76, 83 ; May on Ins., 136 ; 13 Kans. 388 ; 15 Ib. 505 ; *Beebe* v. *Association* (Iowa), 40 N. W. Rep. 122 ; Wood's Fire Ins., § 420 ; 121 Mass. 438 ; 9 Allen, 231 ; 12 Gray, 533 ; 13 Ib. 79 ; 63 N. Y. 531 ; *Bowlin* v. *Ins. Co.* (Minn.), 16 Ins. L. Jour., 305 ; 17 Ib. 734.

These authorities do not conflict with *Rivara* v. *Ins. Co.*, 62 Miss. 727. The waiver in that case was made by an adjuster who had full power to settle losses. Hill's authority could not be established by his statements ; nor by his acts in a single case. 1 Green. Ev., § 113 ; Wood's Fire Ins., § 420 ; *Bush* v. *Ins. Co.*, 63 N. Y. 531.

Hill not only had no authority, but a knowledge of this was brought home to plaintiff by the express terms of the policy, and by the acts and statements of Hill himself. He informed Bowdre of his want of power, and that the adjuster, who had authority to settle the loss, would come in a few days. We grant that if an agent has authority to make a waiver of this kind, it may be by parol, but here there was no such authority. The limitation upon the power of the agent appeared on the face of the policy. Wood's Fire Ins., p. 863 ; 2 Norris (Pa.), 264 ; *Ormond* v. *Association* (N. C.) 1 S. E. R. 796 ; 7 Ins. L. Jour. 423 ; 14 Ib. 278 ; *Fyte* v. *Assurance Co.* (Mass.), 10 N. E. R. 518 ; *Hankins* v. *Ins. Co.* (Wis.), 35 N. W. R. 34 ; 27 Am. L. Jour., 194 ; 3 N. W. R. (Dak.), 313 ; 32 Ib. (Mich.), 660 ; 8 Pacific R. (Cal.), 379 ; 66 N. Y. 274.

In case of any limitation on the agent's authority, knowledge of the same or of facts that should put the assured on inquiry, will affect him with notice. Wood's Fire Ins., § 411.

If Bowdre supposed Hill had authority to act and relied on this, why did he send the copy of the proof of loss to the company ? His own conduct and testimony shows that he relied on Hill as an adviser, and not as the agent and representative of the company, having authority to settle the loss.

On the facts of the case, the court erred in the instructions to the jury. It was clearly erroneous to refuse defendant's fifteenth instruction.

4. The verdict is contrary to the evidence and manifestly wrong, even on the law as charged by the court below, and the judgment should be reversed.

*W. R. Harper,* on the same side.

1. The provision requiring the builder's estimate within a fixed time was not complied with, and the company is not liable. The estimate was necessary in order to enable the company to fix the amount of the loss and determine its liability. The courts have uniformly held that such requirements must be strictly complied with. If the condition is not met within the time limited, it must be shown that it was *impossible,* not merely inconvenient. This is especially true of country risks, and the enforcement of such provisions is essential to the conduct of insurance business in remote districts.

2. Did Hill as agent of the company waive the production of the builder's estimate? On this point the testimony of Bowdre and Hill is in direct conflict. But the circumstances all support Hill, and the weight of evidence is clearly in favor of the defendant. In view of the conflict in the evidence, the court will examine the instructions critically, for a slight misdirection may have been the turning point. We submit that the court erred in charging the jury, particularly in giving plaintiffs' second instruction. This construction is based on a misconception of the doctrine announced in *Ins. Co.* v. *Rivara,* 62 Miss. 728. In that case it was an *adjuster,* having full authority and discretion, who made the waiver in relation to proofs of loss.

Assuming Bowdre's testimony to be true, and that Hill actually made the waiver, the vital question is, did he have authority to bind the company by so doing? The evidence conclusively shows that he did not. The very terms of his appointment and the instructions under which he acted positively forbid him having anything to do with proofs of loss, or from taking any steps at all as agent after the loss.

3. It is not seriously contended, I presume, that Hill had any real authority to make the waiver. Did he have apparent au-

thority? The court below seems to have wholly misunderstood this point. Apparent authority of an agent to do a thing could not be shown by his mere doing it *in the given case.* It must be shown that the agent so acted in other cases, when the principal knew or should have known it.

The court well knows the duty and authority of a mere local insurance agent. It is positively shown in this case that Hill had never performed any of the functions of an adjuster. To hold that the fraud of an agent in wilfully violating instructions in the very first case will bind the principal as an exercise of apparent authority, would seem to be carrying the doctrine of the principal's liability to a dangerous extent; and yet the court below did this.

It must be borne in mind that the very policy Bowdre held notified him that such an agent as Hill had no authority to waive conditions except in writing, and this at least should have put him on guard.

4. It will not do to say that there was a substantial compliance with the conditions of the policy in relation to furnishing within a limited time the builder's estimate as a part of the proof of loss. Such provisions are uniformly upheld and *strictly* enforced. May on Ins., § 465; Wood's Fire Ins., §§ 420, 437; *Smith* v. *Haverhill Ins. Co.,* 1 Allen (Mass.), 297; *Lohnes* v. *Ins. Co.,* 121 Mass. 441.

*Oglesby & Taylor,* for appellees.

1. It is not claimed that there was any fraud or misrepresentation on the part of the assured in obtaining the insurance. No written application was made, and the policy was issued on the knowledge of the agent. True, Bowdre stated that he and his brother owned the property, and that was the fact. It was not necessary that the parties should have such a perfect legal title as would be required to maintain ejectment. All that was meant by the words "an absolute fee-simple title," and all that could be reasonably inferred, was that appellee's paper title purported to vest in them the highest estate known to the law, as contradistinguished from a life estate, leasehold or other limited estate: they had such title. 1 Washb. R. Prop., pages 66, 67.

Plaintiffs had an insurable interest, and the loss fell entirely upon them: that was sufficient. Wood's Fire Ins., pages 195, 196, 560; May on Ins., § 289; 76 Am. Dec. 581; 79 Ib. 673; 31 Grat. (Va.) 749; 7 Lea, 725; 77 N. Y. 605; 47 Vt. 145; *Ins. Co.* v. *Jackson*, 11 Am. R. 390. Parties applying for insurance are not called upon to settle questions of title with very great precision. *McGuire* v. *Ins. Co.*, 52 Miss. 231. To require the perfection of title such as appellants demand, would be to compel every insurer to procure an abstract of his title and the opinion of a lawyer as to its validity, and should the opinion prove erroneous, the insurer would still lose.

2. The notice of loss was prepared by Hill, and was addressed to himself *as agent*. He also wrote out the proof of loss, and admits that he overlooked the builder's estimate. He accepted the proof, told Bowdre that it was satisfactory, and forwarded it to the company. He also told Bowdre that the estimate was not required, and for this reason it was not furnished within the time fixed. As soon as Bowdre could do so, after being informed that the estimate was required, he furnished it. These facts are uncontradicted. The only point of difference is, that Hill testified that he did all this as *an individual*, and not as agent. Bowdre testified to the contrary, and that he relied on Hill as the agent of the company. The court instructed the jury for defendant that if what Hill did was as an individual and not as agent, then the company was not bound by his acts. The presentation of the law was as favorable as defendant was entitled to ask. On this issue the jury found against the defendant. The court will therefore consider the facts as established in favor of plaintiffs. Making the proof of loss can be waived by an agent, notwithstanding the provision of the policy. *Carson* v. *Ins. Co.*, 43 N. J. L. 301; *O'Brien* v. *Ins. Co.*, 52 Mich. 131; *Association* v. *Matthews*, 65 Miss. 301; May on Ins., § 511; *Rivara* v. *Ins. Co.*, 62 Miss. 728; 61 Ib. 43; 13 Wall. 222.

It is an assumption of counsel to say that Hill was a mere local agent. He was a *general agent, with limited territory.*

As to his authority to waive proofs of loss under the facts in evidence, see May on Ins., p. 126; Wood's Fire Ins., § 419. He had

such authority, and could bind the company by his admissions. *Rivara* v. *Ins. Co., supra.*

This is a foreign insurance company, and can only transact business here through agents. Hill was the company so far as Bowdre was concerned, and it must be bound by his acts. *R. R. Co.* v. *Ins. Co.,* 105 Mass. 578 ; *Miller* v. *Ins. Co.,* 27 Iowa, 207 ; 28 Grat. (Va.) 111 ; Wood's Fire Ins., p. 855 ; 52 Miss. 704; 62 Ib. 728.

3. Hill had at least apparent authority to act upon proofs of loss, and that is sufficient, even though he exceeded his actual authority. Wood's Fire Ins., §§ 414, 416, 422. The stipulation in the policy that agents can waive nothing does not change this ; nor did this language give Bowdre notice that he was dealing with an agent at his peril. Wood's Fire Ins., § 412, note 3 ; Ib., § 423, note 3 ; May, § 151 ; 51 Mich. 512 ; 61 Barb. (N. Y.) 335, 32 Hun (N. Y.), 329.

If proofs are made out by agents, all defects are waived. Wood, p. 970. See also p. 942, and note on page 974.

Bowdre furnished the proof, with builder's estimate, within a reasonable time after notice of the defect and that the estimate would be required. If Hill misled plaintiffs, the company, his principal, must stand the consequences. The company cannot take advantage of its own wrong. May on Ins., pages 608, 622, 623 ; 55 Miss. 479 ; 11 Am. R. 50 ; 34 Ib. 324 ; *Ins. Co.* v. *Mahone,* 56 Miss. 180.

WOODS, C. J., delivered the opinion of the court.

The various defenses presented by the defendant corporation in the court below on the grounds of over-valuation of the property destroyed, the vacant and unoccupied condition of the house when burned, the occurrence of the fire through the negligence of the plaintiffs, and the institution of plaintiffs' suit before resort was had to arbitration have been abandoned, as we are led to believe. If mistaken in this, they must now be abandoned, when we declare them to be without merit.

The two other defenses are these, viz : 1. The failure of plain-

tiffs, for more than thirty-six days after the loss occurred, to furnish the defendant with complete proof of loss, including a builder's estimate as to the value of the property. 2. The inability of the plaintiffs' to show that they were the owners of the property in absolute fee simple.

Let us examine these propositions in order and with some minuteness.

1. The plea going to the matter of the failure to furnish proof of loss complete, including the builders' estimate, is confessed and sought to be avoided by an allegation of waiver as to the requirement of the policy touching the furnishing of the builder's estimate by one Hill, the agent of the defendant corporation at Senotabia, and the agent who made the contract for insurance with, and issued to the plaintiffs the policy sued upon.

There is a sharp and irreconcilable conflict in the testimony on this point. The evidence of one of the plaintiffs satisfactorily establishes a waiver by the agent, Hill, and the evidence of the agent, Hill, with equal distinctness denies any waiver. This question of fact was submitted to the jury, under fair instructions from the court, and the issue found for plaintiffs. There is left for our determination the sufficiency of the proof to establish the contention that Hill was not a mere local agent, with very narrow powers, but that he was a general agent in a limited territory, clothed with powers ample enough to authorize him to do that particular act which it is alleged he performed on this occasion, viz ; waive a part of the required proof of loss.

It may be remarked at this point, that the contention of appellant's counsel that there can be no parol waiver by reason of the provision in the policy that such waiver shall be only by writing endorsed on the policy, is not maintainable. In the *N. O. Ins. Association* v. *Mathews*, 65 Miss. 301, this court said that such parol waiver might be made, despite such provision in the policy requiring it to be done in writing, and especially that such stipulation applies only to those conditions and provisions which relate to the formation and continuance of the contract of insurance and are essential to its binding force while it is running, and does not

apply to conditions which are to be performed after loss has occurred.

But was Hill the agent of the defendant corporation in such sense as made him capable of waiving the production of the builder's estimate in this case? It is distinctly shown by the record that on February 24, 1888, Hill was "appointed by the Phenix Insurance Company, of Brooklyn, New York, as its agent for the transaction of the business of insurance in the state of Mississippi, during the year 1888."

Under this appointment was Hill simply a solicitor of insurance, —a mere runner engaged in hunting up persons desiring or needing insurance? Or was he the agent of the company in that larger sense that made him stand for and represent the corporation in its dealings with those doing business with it? All that could be done by any officer of the company in the management of its accustomed business at Senatobia was clearly within the scope of Hill's authority. Having constituted Hill "its agent for the transaction of the business of insurance in the state of Mississippi, during the year 1888," the company had done more than create him a mere local agent with limited powers. It had conferred upon him authority which justified a person dealing with him in regarding him as its general agent, and as authorized to waive a simple condition required to be performed by the insured after loss.

But the controversy would appear to have been put an end to in this state by the opinion of this court in the case of *Rivara* v. *Insurance Co.*, 62 Miss. 728. Judge Arnold in that case said : "The powers of insurance agents to bind their companies are varied by the character of the functions they are employed to perform. Their powers may be limited by the companies in this respect, but parties dealing with them, as to matters within the real or apparent scope of their agency, are not affected by such limitations unless they had notice of the same. An insurance agent clothed with the authority to make contracts of insurance or to issue policies, stands in the stead of the company to the insured. His acts and declarations in reference to such business are the acts and declarations of the company. The company is bound, not only by notice

to such agent, but by anything said or done by him in relation to the contract or risk, either before or after the contract is made."

We are clearly of opinion, therefore, that Hill was a general agent of defendant, and that he might waive the production of the builder's estimate. The jury having found the facts for plaintiffs, as already stated by us, and there being proof to support that finding, we conclude that, on this branch of the case, the contention of appellant is untenable.

2. Let us now consider the remaining ground of defense. The fourth condition in the policy of insurance stipulates that "if the interest of the assured in the property be other than an absolute fee-simple title . . . it must be so represented to the company and so expressed in the written part of this policy."

It appears that no written application for insurance was ever made by the assured, and one of the plaintiffs testified that he thought he represented orally to Hill that plaintiffs were the owners of the property. Leaving out of consideration, however, any effect this proof was legitimately entitled to, is the company's contention maintainable as an independent proposition in the case?

In support of their position, appellant's counsel refer us to the outstanding legal title in the surviving executor of Merriweather, and to the supposed imperfection in the execution of the deed from Ward, the attorney-in-fact, to the plaintiffs, and insist that it is thereby shown that there is not an absolute fee-simple title in the appellees. By the insertion of those words in the conditions of its policies, can it be successfully maintained that the insurance company meant that every loss, occurring under its policies, in which the assured should be unable to show a title indefeasible and good against the world—a title free from every defect, real or seeming, and on which not the smallest cloud rested—should be borne by the assured? To tolerate such an opinion would be equivalent to holding that the company had deliberately set a trap to ensnare the simple-minded and unwary. The contract of indemnity in multitudes of cases, all over the land, would prove only a delusion and a snare to the victims of premeditated cunning. We cannot believe

that any honestly-directed and fair-dealing company will deliberately undertake the management of its business on such basis.

What is meant, then, by the words *absolute fee-simple title* in this connection? It can only mean that the assured did not have a limited interest in the property, but that he claimed and held under a deed of conveyance, or other evidence of title, purporting to invest them with an estate in fee-simple. It can only mean that the assured held under a paper title conferring upon them this sort of estate as contradistinguished from any limited and inferior one. The reason for this distinction is obvious. The insurer will not deal with or take the great risk of indemnifying against loss and damage a mere tenant, leaseholder or other person claiming and having only some qualified interest in the property; but this contract for indemnity will be made only with the person having the title—the beneficial owner—the person having the absolute—*i. e.,* the vested, as opposed to the contingent or conditional—title.

It was well said by the court in *McGuire* v. *Ins. Co.,* 52 Miss. 231, "Parties applying for insurance are not called on to settle questions of title with very great precision." We repeat and emphasize the remark here.

Applying these principles to the case at bar, we will see that plaintiffs are the sole, undisputed, beneficial owners of the property in question, holding under a conveyance purporting to invest them with an estate in fee-simple. The truth is, so far as this record discloses, plaintiffs are the only persons on earth having any sort of interest in or claim of beneficial ownership to the premises. There is, at the utmost, a mere naked legal title outstanding in one of the three surviving executors of Merriweather, and this executor is the mere trustee of the title for these very plaintiffs and their brothers and sisters—all of said brothers and sisters having conveyed their undivided interests to these plaintiffs. Will any one deny that plaintiffs might not, if thought necessary to protect their title, go into a court of chancery and immediately have the naked legal title divested out of the trustee and invested in themselves?

The appellees are the real owners of the premises; they are the

---

Suggestion of error.

---

sole owners asserting title; and they must bear the total loss involved in the destruction of the building, unless we shall hold the company liable.

Substantial right and indubitable justice are in the views we have enunciated, and they must be upheld and enforced by an affirmance of the action of the court below.

*Affirmed.*

*W. R. Harper,* for appellant,

Filed a suggestion of error containing an elaborate and carefully prepared review of the argument as to the power of the agent Hill, in which a number of authorities were cited. In this suggestion the following points were made :—

1. The opinion is far-reaching in its effect, and virtually places the business of the appellant at the mercy of local agents scattered throughout the country, whose interests, *in the settlement of losses,* are always adverse to the company and with their patrons, the home people.

2. It gives to local agents, whose powers are *specified* in their commissions, full authority to do everything, even to adjust losses and draw drafts to pay them, and that, too, against express instructions.

3. If the conferring of enumerated powers gives the other and greater power of settling losses, insurance companies will be compelled to do something to protect themselves against such agents, and the result will be great inconvenience to both the companies and the public.

4. Experience has shown the necessity of delegating all matters pertaining to the settlement of losses to adjusters. This is a universal custom recognized by the courts.

5. Hill had no *real* authority to make the waiver relied upon, for none was expressed in his commission ; and no *apparent authority* was shown by the extrinsic evidence. The rules and regulations referred to in the commission expressly forbade his having anything to do with a loss except report it to the company.

6. An examination of the entire original record in *Rivara* v. *Ins. Co.,* 62 Miss. 728, shows that the decision in that case is no

authority for the position that an agent such as Hill could waive proofs. It was an *adjuster* who made the waiver after the loss. The action of the local agent related only to matters occurring *prior to the loss.*

7. Conferring authority to fix premiums and countersign and issue policies does not carry with it the power to waive proofs of loss. 121 Mass. 439 ; 36 Minn. 433 ; 60 Vt. 682 ; 63 N. Y. 531 ; 52 Ib. 270.

The text of May on Ins., p. 126, and that of Wood's Fire Ins., § 419, are supported only by decisions of inferior courts in New York, and these are distinctly overruled by *Bush* v. *Ins. Co.*, 63 N. Y. 531. Indeed, Wood himself corrects the error carelessly made by him in § 419. See § 420 and cases there cited.

In consequence of this suggestion, the court made some changes in the language of the opinion as originally written, the foregoing being the opinion as modified. The decision affirming the judgment of the court below was not disturbed.