## FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

DURING THE YEAR 1903.

108      1
a207s  166

## Security Ins. Co. of New Haven, Conn., v. Catherine Kuhn.

1. INSURANCE—*What is Meant by the Words "Absolute Fee-Simple Title."*—The words "absolute fee-simple title in a fire insurance policy only mean that the insured does not have a limited interest in the property, but that he claims and holds under a deed of conveyance, or other evidence of title, purporting to invest him with an estate in fee simple. Parties applying for insurance are not called on to settle questions of title with very great precision.

2. SAME—*Executrix Has the Right to Insure to the Extent of the Property.*—An executrix with the legal title to property has full right to insure to the extent of the value of the property. It is not necessary that she should be described as executrix or trustee in the policy. She has a right to insure in her own name.

3. SAME—*Phrase "Unconditional and Sole Ownership" Construed.*—A policy of fire insurance contained the following provision:

"This entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee-simple."

*Held*, that an executrix under a will giving her full power to sell and convey the property at her discretion, and who was also a beneficiary of the trust created by the will, and as such had, during her natural life, if she remain a widow, the exclusive use and enjoyment of all the property devised, is the unconditional and sole owner of it within the meaning of the clause in the policy.

4. WORDS AND PHRASES—*"Property" Defined.*—Property, in its appro-

(1)

priate sense, means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects, and generally to the exclusion of all others.

Assumpsit, on a policy of fire insurance. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed May 7, 1903.

Statement.—In this cause a jury was waived by agreement of the parties, and the cause was submitted to the court on an agreement of facts and certain evidence, and the court found for the plaintiff (appellee here) and assessed her damages at the sum of $1,250, and rendered judgment on said finding. The agreed facts and evidence are, in substance, as follows:

It is agreed between the parties to this suit that on the 8th of August, 1901, the defendant issued to the plaintiff its policy of insurance, which is now introduced in evidence, and is as follows:

" Policy of insurance, reciting that in consideration of the stipulations herein contained and of eighteen and 75-100 dollars premium, said company does insure Catherine Kuhn for three years from August 8, 1901, to August 8, 1904, in the sum of $1,250, on the two-story and basement frame building with addition, situate in the rear of and attached to the brick building No. 140 North Union street, Chicago."

The policy contains the following provisions:

" This policy shall be void if the interest of the insured in the property be not truly stated herein;" also, " This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if  *   *   * the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

The policy further provides that said company shall not be liable under said policy for a greater proportion of any loss to the described property than the amount thereby insured shall bear to the whole insurance.

Also : " This policy is made and accepted subject to the foregoing stipulations and conditions,  *   *   *  nor shall

any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless such conditions are written hereon or attached hereto."

It is further agreed that the premium was paid to defendant and that afterward, and on the 30th day of October, 1901, a fire occurred, and at that date there was other insurance covering the property described in said policy to the amount of $5,000, making $6,250 of insurance on said property described in said policy of appellant; that afterward, and on the 30th of October, 1901, a fire occurred by which the property described in said policy was damaged to more than the amount of all the insurance covering thereon; that on the 18th of November, 1901, the plaintiff made to defendant a proof of loss, which is introduced in evidence and was in part as follows:

" Security Insurance Company of New Haven, Connecticut:

By your policy of insurance No. 102216, issued at your Chicago agency, dated the 8th day of August, 1901, and expiring the 8th day of August, 1904, at 12 o'clock noon, you insured Catherine Kuhn, trustee, against loss and damage by fire to the amount of twelve hundred and fifty dollars," etc.

Further on in said proof of loss appears the following:

" The property described in said policy belonged, at the time of the fire hereinafter mentioned, to Catherine Kuhn, trustee of the estate of Frank Kuhn, deceased."

Said proof of loss further recites that there was other insurance in the Eureka Fire Insurance Company, in the Security Insurance Company of Ohio and in the Thuringia American Insurance Company of New York, which insurances, added to that in the appellant company, make a total of insurance amounting to $6,250.

It is further agreed that sixty days elapsed between the time of said loss and the date of bringing the suit.

It is further agreed that the plaintiff, at the time of the destruction of said property, and at the time the policy was issued, held said property under the will of her husband, Frank Kuhn, and that the only title which she had to the property is that which was given to her under the

provisions of said will, which will is introduced in evidence and is as follows:

" I, Frank Kuhn, of the city of Chicago, being of sound mind & memory, do make, publish & declare this my last will & testament:

I.   I desire that all my just debts shall be paid & discharged out of my estate.

II.   All the rest & remainder of my estate remaining after the payment & discharge of said debts, real estate as well as personal, and mixed estate & property, I give, devise & bequeath to my executors hereinafter named, in trust, however, only to & for the uses & purposes hereinafter mentioned. And for the purpose of facilitating the winding up & settlement of my estate and promoting the interest of my devisees I do hereby fully empower and authorize my said executors, and the survivor of them, to let, sell, exchange, encumber, convey all, each and every part or portion of my real and personal property, and the proceeds of such sale or other disposition of the same, or any part thereof, again, in their discretion, to reinvest in the purchase of other real or personal estate, or in bonds, stocks, or other securities, or to lend the same at interest upon real estate or other securities, as may by them be deemed most advisable, and the property and estate so acquired, with such proceeds, again to hold under the same restrictions, and for the same uses and purposes hereafter particularly set forth, namely:

The real and other estate hereinabove to my said executors given, devised and bequeathed, is to be held by them and the survivor of them in trust; first, to and for the exclusive use & enjoyment thereof, during the term of her natural life, of my wife, Katharina, provided she shall so long remain my widow and unmarried, who is to have and retain the exclusive possession, use, enjoyment and control thereof, and shall have the use, enjoy the same and each and every the income, rents, profits and proceeds arising therefrom, as long as she shall remain unmarried after my death to and for her own use & behoof.

Should my said wife, however, marry again after my death, then, upon such remarrying, the operation of the above provision in her favor shall at once cease and be of no further effect, and she shall thereby become and be entitled only to such dower in my real estate, then remaining unsold or undisposed of, and other portion in my other estate as she would in law be entitled to if I died intestate.

Security Ins. Co. v. Kuhn.

Upon the remarriage or death of my said wife, the trust estate hereby created shall at once cease, and the trust property shall thereupon go to, and the title to the real estate become vested in my children, and the whole of my estate remaining unconsumed and constituting such trust fund shall be divided equally between them, share & share alike; and if in the meanwhile any one or more of my children shall have died, leaving a descendant or descendants, such deceased child's share shall go to his or her issue, descendant or descendants.

I do hereby nominate and appoint my said wife, Katharina, the executrix, and my son, Emil Kuhn, the executor of this my last will and testament, and I do hereby expressly provide that no security shall be taken from them, or either of them, for the faithful performance of their duties in that behalf.

In witness, I have hereunto set my hand & seal this 29th day of February, 1878.

(Signed)    FRANK KUHN.    [SEAL.]

Witnesses :
CHARLES MUNCH,
FRANCIS LACKNER."

Will proved and admitted to record in the Probate Court June 30, 1890.

Renunciation of Emil Kuhn, one of the executors under said will of Frank Kuhn, deceased, who refuses to take any part in the probate of said will, and refuses to act as executor.

Letter of appellant to Mrs. Catherine Kuhn, dated December 21, 1901, introduced in evidence, stating that the interest of the insured was not truly stated in said policy as required under lines Nos 8 and 9 of said policy, also calling her attention to lines 16 and 17, providing that the policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the ground was not owned in fee simple by the insured; and further stating :

"Furthermore, we do not consider such occupancy of the building as existed as the time of the fire as complying with the conditions mentioned in lines Nos. 29 and 30 of said policy.

For this and other reasons we take the position that no

liability whatever exists under the above mentioned policy, and the alleged proofs of loss are held declined, subject to your order.

We have directed our agents to tender you the full premium paid for said policy.

Expressly reserving all our rights and defenses, we are,
                    Yours truly,
                    THE SECURITY INSURANCE COMPANY,
                         By J. C. HARVEY, Adjuster."

"It is further admitted that E. A. Kuhn, one of the trustees mentioned in said will, died before the bringing of this suit. It is further admitted that the estate of Frank Kuhn, deceased, was closed in the Probate Court on the 21st day of July, 1892, and that the plaintiff in this suit is seventy years of age and has not remarried."

George W. Bowman, called by appellee, testified that August 8, 1891, he was agent for the Eureka Insurance Co. of Cincinnati, the Security Insurance Co. of Cincinnati, and the Thuringia American Insurance Co. of New York. He also testified, in substance, as follows:

"I ordered this insurance for Mrs. Kuhn from the Security Insurance Company of New Haven, Connecticut, through the office of J. O. Wright. J. O. Wright was the agent for the Security Insurance Company of New Haven. This insurance was placed in my office by Mrs. Kuhn's son. He ordered me to place the insurance. I said to Mr. Kuhn, 'Our company has too much liability on this risk and we would have to reduce it and place some outside in another company;' and I went and procured this policy from the Security Insurance Company of New Haven, from Mr. J. O. Wright, its manager in Chicago. I have also placed other insurance with Mr. Wright, and Mr. Wright has made application to me for insurance also."

Mr. J. O. Wright, appellant's agent, testified that Messrs. Radcliffe & Bowman placed the policy with him for the insured; that he thinks it was Bowman who came for it; that he, witness, signed the policy; that he knew nothing about the title of appellee to the property, and that Bowman said nothing to him about the title; that witness did not know appellee, and did not know, until after the fire, that she was not the sole and unconditional owner of the property; that Bowman had no connection with appellant,

and never acted for appellant, etc., and that the following was the application for the policy :

" J. O. WRIGHT, Insurance,
          195 La Salle St., Chicago.
   Insure Catherine Kuhn
        For 3, from 8–8–1901, to 8–8–1904.
Security of Connecticut, Amount. Premium. No. of Policy.
                     $1,250.      $18.75        102218
Map, Vol. 1, page 36.
2 sty. & bast., fr. bldg. (with fr. addn.) sit in rear and
   attached to the brk. bldg., No. 140 N. Union St.
                  (Signed)    RADCLIFFE & BOWMAN,
                                            Applicant."

Frank C. Kuhn, appellee's son, testified that he had something to do with the property, such as placing insurance, looking after taxes and special assessments and repairs; that July 26, 1900, he told Bowman that his mother had a life estate in the property, etc.; that he got the policy in suit in August, 1901; that Bowman told him the Eureka Insurance Company of Ohio did not wish to carry so much insurance on the property; that the company had $3,750 on the property in two separate policies, and wanted to cancel the one of $1,250, and that " if I would return that one he would get me another like it for $1,250, and I told him that would be satisfactory." Kuhn also testified that leases of the property were executed in his mother's name.

Bowman, being recalled by appellant, testified that he said nothing to Mr. Wright about the title, and never talked about it to Mr. Kuhn or any one else.

Appellant put in evidence an agreement of date March 6, 1896, purporting to be between Catherine Kuhn of the first part, and Frank C. Kuhn, Adolph A. Kuhn, Emma W. Spangler and Annie Bartels of the second part. The agreement is signed in the names of all the parties, and the signatures of Catherine and Frank C. Kuhn and Emma W. Spangler were proved. The agreement, after reciting certain provisions of the will, and that appellee claims that the net income of the property is not sufficient for her support, and that she desires to sell part of the same, and that the second parties desire to keep the realty intact as far as

possible, and especially that Kuhn's Park, being lot 7, etc., (describing it) shall remain unsold and unsubdivided into lots till it shall be necessary to sell the same, but are willing that parts of the real estate may be sold, if necessary, to give to appellee necessary income for her comfortable support, provides, in substance, that the management of the estate shall be transferred to the Security Title and Trust Company for the benefit of all parties interested, said company to take possession thereof, make leases in appellee's name, receive the rents, pay taxes, etc., and from time to time pay the net income to appellee; and should a sale be made of any of the realty, said company to receive the proceeds thereof, invest the same in good income-producing securities, and pay the income thereof to appellee. The agreement then fixes the necessary income of appellee at $2,500 for the year ending March 1, 1897, and $3,500 per annum for each year thereafter, and provides that if the net income shall be less than the amount so fixed, appellee shall have the right to sell, from time to time, for the best price she can obtain, so much of the real estate as may be necessary, when the proceeds thereof are invested, to produce said fixed income, Kuhn's Park to be sold last, if a sale of said park shall at all be necessary. There are other provisions in the agreement unnecessary to be mentioned. The Security Title and Trust Company accepted the trust, and notified appellant of it, and not to settle the loss on the insured property with appellee, but with the company.

BATES, HARDING & ATKINS, attorneys for appellant.

The interest of the insured in the property described in said policy was not that of sole and unconditional ownership, and the subject of insurance was a building on ground which was not owned by the insured in fee simple, and therefore the plaintiff below was not entitled to recover. Reaper City Ins. Co. v. Brennan, 58 Ill. 158; Illinois Mut. F. Ins. Co. v. Marseilles Mfg. Co., 1 Gil. 236; Collins v. St. Paul F. & M. Ins. Co., 20 Ins. L. J. 179; Garver v. Hawkeye Ins. Co., 69 Ia. 202; Hebner v. Palatine Ins. Co., 55 Ill. App. 275; Hebner v. Palatine Ins. Co., 157 Ill. 144;

May on Ins., 3d Ed., Sec. 287A; American & English Enc. of Law, Vol. 6, page 876, under head of Estate in Fee Simple; Washburn on Real Property, Vol. 1, page 68; Southwick v. Atlantic F. & M. Ins. Co., 133 Mass. 457; Brown v. Com. Ins. Co., 86 Ala. 186; Fuller v. Phœnix Ins. Co., 61 Ia. 350.

WILLIAM M. & WILLIAM S. JOHNSTON, attorneys for appellee.

The language of the will of decedent gives appellee absolute control of the property for all purposes and vests the fee simple title in her. The will expressly provides she should not be interfered with by any one in her title or management of the property, and that the title to the property should not vest in any one else until her remarriage or death. Haward v. Peavey, 128 Ill. 430; Kingman v. Harmon, 131 Ill. 171; Hale v. Hale, 146 Ill. 227; Chapin v. Crow, 147 Ill. 219; 27 Am. & Eng. Ency. Law, 111 (1st Ed.); Lycoming Ins. Co. v. Jackson, 83 Ill. 302; Traders' Ins. Co. v. Pacaud & Co., 51 Ill. App. 252; Rockford Ins. Co. v. Nelson, 65 Ill. 415; Clark v. German Mutual Ins. Co., 7 Mo. App. 77; Imperial Fire Ins. Co. v. Dunham, 117 Pa. St. 460.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel rely on the following provision in the policy:

"This entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple."

It is contended that appellee was not, at the date of the issuing of the policy, the unconditional and sole owner of the insured property, namely, the two-story and basement frame building, with frame addition, situate in rear of and attached to the brick building number 140 North Union street, Chicago, Illinois, and that she did not own, in fee

simple, the ground on which said described building was situated.

"A tenant in fee simple is he which hath lands or tenements to hold to him and his heirs forever," so that one can not have a larger or greater estate. 1 Coke upon Littleton, 1 Am. Ed., Chap. 1, Sec. 1; 1 Cooley's Blackstone, p. 103. It must be conceded that appellee has not such an estate, either in her representative capacity or as beneficiary under the will. In her representative capacity the legal title to all the property, real and personal, devised and bequeathed by the will, is vested in appellee as executrix, and was so vested, at the date of the policy, her co-executor having declined to take any part in the probate of the will or to act as executor; but appellee had not, as executrix or otherwise, an estate of inheritance, because her title is, by the will, determinable on her death or marriage. But the question remains whether the fact that appellee had not technically title in fee simple, is conclusive against her right of recovery. She had, August 8, 1901, as executrix, the legal title exclusive of all others. The children of the testator had not and have not any vested interest in the devised premises. The words of the will are:

"Upon the remarriage or death of my said wife, the trust estate hereby created shall at once cease, and the trust property shall thereupon go to, and the title to the real estate become vested in my children, as the whole of my estate remaining unconsumed and constituting such trust fund shall be divided equally between them, share and share alike; and if in the meanwhile any one or more of my children shall have died, leaving a descendant or descendents, such deceased child's share shall go to his or her issue, descendant or descendants."

In Haward v. Peavey, 128 Ill. 430, the will, after directing payment of the testator's debts and providing that the rest or residue of the testator's property should be held in trust by his executors for the benefit and support of his wife so long as she should remain unmarried, contains these words: "On the death of my wife, or in the event of her marrying again, my executors shall then proceed to

divide the property among my children." Ib. 440. The court say:

" If one or more of the sons named had died before the death of the widow, it would have been doing violence to the language of the will to hold that any estate was thereby vested in them. They would have been excluded by the very terms of the will from the number of those named as beneficiaries. The persons to whom the estate would go being wholly uncertain during the continuance of the particular estate, it must be held that the contingency named, viz., that the persons who were to take the estate should be alive at the death or remarriage of the widow, was a condition precedent to the vesting of the estate, and that until the condition happened the estate was necessarily contingent." Citing authorities. See also, Walton v. Follansbee, 131 Ill. 147.

In Ducker v. Burnham, 146 Ill. 9, the will is not set out in the opinion, but it appears from the opinion that a life estate was devised to the testator's wife, remainder to his five children. The contest was over the sixth clause of the will, which clause recognized that by the preceding fifth clause there was a devise to the children. The court held that the children had a vested estate in remainder. The court in that case say :

" Whether the condition is really precedent or subsequent will depend upon whether it is incorporated into the gift, or description of the remainder-man, or is added after words which have already given a vested interest."

In the present case the only clause of the will in which the testator's children are mentioned is the clause last above quoted, and the condition is mentioned in that clause. The court also say :

" It is well settled that, in the interpretation of wills, the intention of the testator must control, and that the whole will and all its parts must be considered in order to ascertain what that intention is."

The will in question clearly manifests the intention of the testator, that his children shall take nothing until after the marriage or death of his wife. The language is :

" Upon the remarriage or death of my said wife the trust

hereby created shall at once cease, and the trust property shall thereupon go to, and the title to the real estate become vested in my children, and the whole of my estate remaining unconsumed, and constituting such trust fund, shall be divided equally between them," etc.

Our conclusion therefore is, that the legal title to the ground on which the insured building was, when the policy was issued, was exclusively in appellee. It is an important question whether appellee was bound to disclose her exact title, in view of the circumstances under which the policy was issued. It appears from the testimony of Bowman, the agent of the Eureka Insurance Co., and of Frank O. Kuhn, appellee's son, who looked after insurance generally for appellee, that Bowman proposed to Kuhn that the $1,250 policy in the Eureka Company should be surrendered and canceled, for the reason that the company did not wish to carry so much insurance as it was carrying on the property, and he told Kuhn that if the policy should be surrendered, he would procure a like policy in another company, on which last condition Kuhn assented to the exchange. It also appears from the testimony of Bowman and Wright, that each of them had been accustomed to procure policies from the other, under circumstances similar to those under which the policy in question was issued, and it would seem that, in issuing the policy in question, Wright, appellant's agent, relied on the fact that the Eureka Company had issued the policy proposed to be canceled. Wright did not ask Bowman anything in respect to the title, nor did he require a formal written application, as is usual in the case of an owner of property applying for insurance. Bowman, in procuring the policy in question, was not acting as appellee's agent, but as the agent of the Eureka Insurance Co., and for the benefit of that company. This appears not only from the testimony of Frank C. Kuhn, but from Bowman's own testimony. Kuhn's testimony has already been referred to. In the examination of Bowman the following occurred:

Q. "Do you say by this order, that he (referring to Frank C. Kuhn) directed you to place it in the defendant

company?" A. "No, he did not. I placed it there of my own accord."

He also testified that he procured the policy because the Eureka Company had too much liability on the risk. So far as appears from the record, appellee was entirely satisfied with her Eureka policy.

What is called by Wright an application is a mere memorandum made by Bowman, as the agent of the Eureka company, for the purpose of apprising Wright of what was wanted by that company. It is a memorandum of the name of the assured, the property insured, the amount of insurance and the premium, etc., in the policy issued by the Eureka Company, and doubtless was sufficient, in view of what was contemplated by the agents of the respective companies, and presumably was in conformity with their prior practice in like cases; but it was not such an application as is required of owners applying for insurance, and can not, as we think, be considered other than a mere oral application. Appellee did not apply for the policy. The memorandum is not even signed in her name. It is signed "Radcliffe & Bowman, Applicant," and the presumption is that it was delivered to that firm by Wright.

In Philadelphia Tool Co. v. Assurance Co., 132 Penn. St. 236, the defense was the same as in the present case, in respect to which the court say:

"This position rests on one of the almost innumerable conditions, stipulations and provisos which appear on the policy, and which asserts that if the assured is not the sole and unconditional owner of the property, or if the building stands on ground not owned in fee simple by the assured, or if the interest of the assured is not truly stated in the policy, then the policy shall be void. Is this condition applicable to the case presented on this policy? A policy of insurance, like any other contract, is to be read in the light of the circumstances that surround it. This policy was issued without any application or written request describing the interest of the assured in the buildings. No actual representation of any sort upon the subject, oral or written, is alleged to have been made by or on behalf of the assured. We ought to assume that a policy

written under such circumstances was written upon the knowledge of the representative of the insurer, and intended to cover in good faith the interest which the insured had in the buildings. Fraud is never to be presumed, and in this case no fraudulent representation is shown or alleged, unless it can be deduced from the statements of the insurer, made, as we must presume, on the knowledge of its representative, and for which the insured is in no manner responsible. We must also remember that this policy is to be interpreted most strongly against the company whose contract it is. Applying these principles to the question now raised, we conclude that the policy written on the knowledge of the insurer was made in view of the facts of the case, and was intended to cover such interest in the buildings as the insured had. This was a leasehold only, but it was an insurable interest. Presumably it is the interest which an application, if one had been made, would have shown, for it is the only interest which the tool company ever had or claimed to have."

See also, Joyce on Insurance, Sec. 496, and Phenix Ins. Co. v. Bowdre, 67 Miss. 620, 635.

In the last case one of the defenses was the inability of the plaintiffs to show that they were the owners of the property in absolute fee simple; a condition of the policy was: "If the interest of the assured in the property be other than an absolute fee simple title, it must be so represented to the company, and so expressed in the written part of the policy." The court say:

"What is meant, then, by the words 'absolute fee simple title' in this connection? It can only mean that the assured did not have a limited interest in the property, but that he claimed and held under a deed of conveyance, or other evidence of title, purporting to invest him with an estate in fee simple. It can only mean that the assured held under a paper title conferring upon him this sort of estate as contradistinguished from any limited and inferior one. The reason for this distinction is obvious. The insurer will not deal with or take the great risk of indemnifying against loss and damage a mere tenant, leaseholder or other person claiming and having only some qualified interest in the property; but this contract for indemnity will be made only with the person having the title—the beneficial owner—the person having the absolute, *i. e.*, the vested, as opposed

to the contingent or conditional title.    It was well said by the court in Ins. Co. v. McGuire, 52 Miss. 231: 'Parties applying for insurance are not called on to settle questions of title with very great precision.' We repeat and emphasize the remark here."

The case cited was similar to the present, in that there was no written application by the owner.  Appellant's counsel are very insistent that appellee is not the unconditional and sole owner of the building, but fail to point out who was the sole owner if not appellee, and the condition, if any, of appellee's ownership.   The building is part of the realty, and, as executrix, appellee has the legal title to the realty, and the exclusive management and control of the property, with full power to sell and convey it at her discretion.   As beneficiary of the trust created by the will, she has during her natural life, if she remains a widow, the exclusive use and enjoyment of all the property devised. The language is:

" The real and other estate hereinbefore to my said executors given, devised and bequeathed, is to be held by them and the survivor of them in trust; first, to and for the exclusive use and enjoyment thereof during the term of her natural life of my wife, Katherina, provided she shall so long remain my widow and unmarried," etc.   " Property, in its appropriate sense, means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or subjects, and generally to the exclusion of all others."   Rigney v. City of Chicago, 102 Ill. 64, 77.

Such is the dominion or indefinite right which appellee has in respect to the property in question.   She has, by the very terms of the will, " the exclusive possession, use, enjoyment and control of it."   Therefore she is the unconditional and sole owner of it.

In reference to the clause as to unconditional and sole ownership, see 3 Joyce on Insurance, Sec. 2048, and cases cited.

Appellant's counsel contend that if appellee can recover at all, her damages must be limited to her insurable interest, which counsel contend is less than the value of the destroyed property.

Appellee has the legal title as executrix, and is the sole beneficial owner, and, in either capacity, had full right to insure to the extent of the value of the property. It was not necessary that she should be described as executrix or trustee in the policy. She had the right to insure in her own name. 2 Joyce on Ins., Sec. 1694 and 1716; 1 Hay on Ins., Sec. 80.

Counsel for appellant lay some stress on the agreement between appellee and the children of the testator. Assuming that, as between appellee and the children, there was a sufficient consideration for the agreement, which we think at least doubtful, the agreement does not affect appellee's title to or ownership of the property.

The judgment will be affirmed.