RUTHVEN BROTHERS v. THE AMERICAN FIRE INSURANCE COMPANY, Appellant.

**Insurance:** PRINCIPAL AND AGENT: *Waiver of policy conditions.* In an action on an insurance policy requiring immediate notice of loss, and proof within sixty days, and providing that no condition thereof should be waived unless in writing, it appeared that the local agent of the defendant immediately notified the general manager, who had power over agents, and to pass finally on all proofs of loss; that the general manager directed a special agent, appointed by himself, to adjust the loss; that the special agent, with the approval of his superior, placed the matter in the hands of the adjuster of another company interested in the same loss, who, after examination, informed plaintiffs that the loss was total and that it exceeded the insurance, and that it was not necessary for them to do anything further in the matter; and that plaintiff, relying on such statements, did not make proof of loss until after the sixty days. *Held,* that the jury was authorized to find that the formal proofs required by the policy, and the notice and affidavit required by Acts Eighteenth General Assembly, chapter 211, section 3, were waived by the general manager of defendant, and that he also waived the written indorsement required by the terms of the policy.

EVIDENCE. Letters written by agents of an insurance company are admissible in evidence in an action on the policy, where they show the history of the negotiations between the parties, or contain admissions made in the line of their duty, by which their principal is bound.

*Appeal from Palo Alto District Court.*—HON. W. B. QUARTON, Judge.

SATURDAY, MAY 29, 1897.

ACTION at law on a policy of insurance. There was a trial by jury, and a verdict and judgment for the plaintiffs. The defendant appeals.—*Affirmed.*

*R. W. Barger* for appellant.

*B. E. Kelly* and *Soper, Allen & Morling* for appellees.

Robinson, J.—The policy in suit was issued by the defendant, and insured the plaintiffs against loss or damage by fire, to the amount of one thousand dollars, for the term of one year. The property insured was a double, frame icehouse, situate on the shore of Lost Island Lake, near Ruthven. On the fifteenth day of October, 1891, during the life of the policy, the icehouse was destroyed by fire. The loss not having been paid, this action was commenced in May, 1892. A trial was had in November of that year, which resulted in a verdict and judgment for the plaintiffs. An appeal was taken to this court, and the judgment of the district court was reversed. See *Ruthven v. Insurance Co.*, 92 Iowa, 316. After the cause was remanded to that court for further proceedings, amendments to the petition were filed, another trial was had, during which evidence not submitted at the first trial was introduced, and a verdict for the amount of the policy, with interest, was returned. The judgment was for the amount fixed by the verdict.

The policy required the assured, in case of loss, to give immediate notice of the loss, and make proof of it within sixty days after the fire. Section 3 of chapter 211 of the Acts of the Eighteenth General Assembly requires the assured, in order to maintain an action on his policy, to prove that he gave the insurer notice in writing of the loss, accompanied by an affidavit stating the facts as to how the loss occurred, and that the notice be given within sixty days from the time the loss occurred. It is admitted that the notice and proof of loss required

by the policy and by the statute were not given until after the expiration of the time stated. It is insisted by the appellees, however, that notice and proof were waived by the defendant. The policy contains the following provision: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permisssion affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." The question of chief importance which we are required to determine is, whether the jury was authorized to find that the requirements of the statute and policy with respect to the notice and proof were waived. It is well settled that such requirements may be waived by the insurer through its authorized agents. *O'Leary v. Insurance Co.*, 100 Iowa, 390; *Harris v. Insurance Co.*, 85 Iowa, 239; *Green v. Insurance Co.*, 84 Iowa, 135; *Hollis v. Insurance Co.*, 65 Iowa, 458; *Viele v. Insurance Co.*, 26 Iowa, 54. "Any condition of a contract of insurance may be waived by the insurance company." *King v. Insurance Co.*, 72 Iowa, 315. It is said, however, that under the provision of the policy which we have set out, a waiver, to be effectual, must be indorsed upon the

policy by an agent who has the authority to do so, and that, as a waiver was not so indorsed in this case, none can be shown. We held on the former appeal that the provision was valid, and that the evidence then submitted did not show that certain agents named had authority to waive it, but that we were not to be understood as holding that the defendant could not, through his general agents, waive the provision.   We also said that it was a limitation upon the power of the defendant's local, special, and adjusting agents; but what we said upon that point was made to depend upon the evidence then before us.   The evidence submitted on the last trial is radically different in important particulars. It tends to show, and authorized the jury to find, that the powers of the agents of the defendant were substantially as follows:   C. E. Bliven was the general manager of the western department of the defendant, and at the time of the loss had been such manager for about six years.   His department included the western states in which the defendant was doing business.   He had power to appoint agents of the defendant within his department, and prescribe their duties.   All proofs of loss were submitted to him, all payments were made by him or under his direction, and his action in regard to loss was final, unless modified or reversed by the courts.   He employed as special agent for the states of Iowa, Nebraska, and Wyoming, C. W. Miller, and gave him the authority which he exercised.   That included the appointment and supervision of agents within his territory, the collection of balances, the inspection of business, and the examination and inspection of losses.   Bliven did not investigate losses personally, and those which occurred in Miller's territory were referred to Miller for investigation and report.   Although Bliven had the right to disapprove his reports, he never did so, and Miller was

in fact the adjuster of the defendant for Iowa and the other states in which he acted.

It appears that, when the loss occurred, Ingersoll, Howell & Co., local agents of the defendant at Des Moines, were at once informed of it, and reported it to Manager Bliven. Two days after the loss occurred, on the seventeenth day of October, 1891, he instructed Miller, at Des Moines, as follows: "Please give attention to the loss at agency, Des Moines, Iowa. Assured, Ruthven Brothers; policy, 3,505; amount, $1,000; property, icehouse; fire, October, 1891; loss, $1,000; remarks, please adjust. Very truly, yours, C. E. Bliven." Miller arranged with an agent of the Dubuque Fire & Marine Insurance Company to attend to the matter, and on the nineteenth wrote Bliven as follows: "I have made arrangements to go to Grand Island, Neb., to-night, and have asked Mr. Wernimont, special agent Dubuque Fire & Marine, who is on the loss with us, to look after our loss. The expense will be less than if I went. * * * Hoping that my action in this matter will be satisfactory to you, very respectfully, yours, C. W. Miller, Special Agent." On the twentieth Bliven wrote Miller as follows: "Yours of * * * 19th at hand. Des Moines, 3,505. Note you have turned the adjustment of the loss over to Sp. Agt. of the Dubuque, and your action is approved. Yours, truly, C. E. Bliven, Gen. Mgr." Wernimont visited the place of the loss, and on the twenty-fourth wrote to Miller from Ruthven as follows: "Have been here two days, and after a careful investigation of the Ruthven Bros. icehouse have the following to report: Buildings were erected during the month of February, 1890, * * * were well constructed, and for permanent purposes. Fire originated in Des Moines Ice Company's building, which was started by Mr. Teachout of your city, who is connected with said company. To avoid the expense of removing several loads of straw from the building,

he started a fire in the interior thereof to burn the
same.   In some manner the flames spread, consuming
the building, and then spread to the building covered
by our policies, which stood some thirteen feet distant.
As we believe that there is no question but what Ruth-
ven Bros. can recover damages from Mr. Teachout, as
he is certainly liable for loss of said property through
his carelessness, and that Ruthven Bros. can recover
their insurance only after it is shown they cannot
recover from the parties responsible for their loss, we
want to take a little time to consider matters before
we proceed any further.   The loss is total.   I inclose
diagrams and estimates from Ruthven and Emmets-
burg parties.   Have not made up proof of loss, and will
not for the present, as I am trying to get a settlement
with the firm, with understanding that they will try
and recover damages first.   We will advise you as soon
as we proceed further, and will try and get matters in
shape inside of the sixty days allowed." October twenty-
sixth Miller forwarded that report to Bliven, and in
his letter transmitting it stated:   "Mr. Teachout is a
resident of this city, and perfectly responsible.   What
is your opinion in regard to his liability for the loss?
The loss is more than total.   The lumber and hard-
ware in the building cost $3,350.21, with $2,000 insur-
ance."   On the twenty-sixth Bliven responded as fol-
lows:   "I have read the letter of the special agent,
herewith returned for your files, with much interest.
There is no doubt of the liability of the party
who set the building on fire, and have no
doubt our claimants could recover of him.   Whether
they may elect to recover from us first, and subro-
ogate us to the amount of their claims against the
party causing their fire, or recover from him, is a
doubtful question.   Let the matter drift until we are
obliged to take action."   On the twenty-sixth day of
December, 1891, Miller wrote to Bliven:   "This is an

honest loss, so far as the assured is concerned; but assured has failed to make proofs within the time stated in his policy, and within the time given him under our law; but I don't presume you would want to take advantage of this point in a perfectly honest loss; but I think we should make assured commence suit against the Des Moines Ice Company, and, if he fails to collect from them, we could then pay his claim against us." On the twenty-eighth Bliven wrote to Miller as follows: "* * * No claim for loss has yet been made. Not knowing what action the special agent for the other company interested took, and as he was practically acting for us, I cannot say whether the so-called P. L. required by the policy was waived. As the matter is in his hands, we perhaps had better wait his action and advice." Other letters passed between Bliven and Miller in regard to the loss, and there was correspondence in regard to it between the plaintiffs and their representatives on one side and Bliven on the other. The testimony of Bliven and Miller was also used on the trial.

From the evidence submitted the jury was fully authorized to find, not only that Miller was the adjuster for the defendant in this state, but also that Wernimont was, for the purposes of the loss in question, the authorized adjuster of the defendant, and his acts and statements, so far as they were authorized, were the acts and statements of the defendant. He visited Ruthven, as already stated; told the plaintiffs that he was authorized to adjust the loss for both his own company and the defendant; went out to the place where the icehouse had stood; inspected bills of the plaintiffs for the construction of the house; obtained prices at the hardware stores and lumber yards, and made an estimate of the cost of the building; selected appraisers, who signed an appraisement; and made a thorough investigation in regard to the

circumstances and extent of the loss.  After he had done that, he stated to the plaintiffs that the loss was total and exceeded the insurance; that it was not necessary for them to make proofs of the loss, or to do anything further in the matter; and that he would report the facts to the companies, and that the policies would be paid.  He had blanks for formal proofs of loss, but stated that it was not necessary that they be executed.  The plaintiffs relied upon the statements made to them by Wernimont, and did not make formal proof of loss until after the expiration of sixty days from the date of the fire.  The defendant did not ask for further proof.  After the expiration of the sixty days Miller visited Ruthven, but did not intimate in any manner that the loss was not an honest one.  In fact, it is not now, and never has been, disputed that the plaintiffs were entitled to recover the amount of their policy, had the required notice and proofs been given within the time fixed by the statute and the policy.  It is true that at one time the suggestion was made that the plaintiffs should first seek to recover the amount of their loss from the party responsible for the fire; but Bliven, in a letter written in January, 1892, states that he does not think that they could be compelled to do it, but proposed to use the failure to give timely notice and proof as a means of forcing a compromise. The admitted facts are that the defendant is endeavoring to defeat the collection of an honest loss, about which there has never been any question, on the ground that formal notice and proof, which it did not need or desire for any purpose, of facts of which it was fully advised, which it had carefully investigated, and concerning which it was fully satisfied within a week after the loss occurred, were not furnished within sixty days of that time; and to that statement should be added the fact that its adjuster had induced the

plaintiffs not to furnish the notice and proof by telling them that they were not required.

A written contract, not required to be in writing, may usually be changed by parol, although it contain a provision to the effect that it can be changed only in writing. Persons competent to make such an agreement may, as a rule, abrogate it by a subsequent one entered into in any manner authorized by law. *Insurance Co. v. McCrea*, 8 Lea, 513. It is the law in some states that an instrument under seal cannot be changed by a subsequent parol agreement; but it is the general rule that contracts not under seal, and not required by law to be in writing, may be so changed. The reason for this is that a written agreement not under seal is not of a higher degree than a verbal one. *Morrison v. Insurance Co.*, 69 Tex. 353 (6 S. W. Rep. 605), 5 Am. St. Rep. 69; *Taylor v. Railroad Co.*, 99 N. C. 185 (5 S. E. Rep. 750). The use of private seals in written contracts, except the seals of corporations, is abolished in this state. Code, section 45, subd. 20; Code, section 2112. And the general rule in regard to instruments not under seal applies to the policy in suit. The defendant is a corporation, and can act only by its agents. It can become a party to a contract only through their instrumentality. The provision in question was inserted in the policy through their procurement, and it could have been changed, with the concurrence of the assured, by any duly-authorized agent. It was said in *Lamberton v. Insurance Co.*, 39 Minn. 129 (39 N. W. Rep. 76), that "a contracting party cannot so tie his own hands, so restrict his own legal capacity for future action, that he has not the power, even with the assent of the other party, to bind or obligate himself by his further action or agreement, contrary to the terms of the written contract." In *Farnum v. Insurance Co.*, 83 Cal. 246 (23

Pac. Rep. 869), it was said: "It is also well set-
tled that an insurance company cannot so limit
its capacity to contract, by general stipulations against
waiver of conditions, or that its contracts or waivers
must be in writing, that it cannot by its agents make
an oral contract or an oral waiver not forbidden by
the statute of frauds." The rule thus stated finds
support in the following cases: *Robinson v. Berkey*,
100 Iowa, 136; *Peterson v. Machine Co.*, 97 Iowa, 148;
*Osborne v. Backer*, 81 Iowa, 378; *Renier v. Insur-
ance Co.*, 74 Wis. 89 (42 N. W. Rep. 210); *Dick v.
Insurance Co.* (Wis.) 65 N. W. Rep. 642; *Insurance Co.
v. Earle*, 33 Mich. 143; *Berry v. Insurance Co.*, 132 N.
Y. 49 (30 N. E. Rep. 254); *Insurance Co. v. Bowdre*, 67
Miss. 620 (7 South Rep. 596). In *Farnum v. Insurance
Co.*, *supra*, it was also said that "whether or not any
particular agent has the general power of the company
to make an oral contract or an oral waiver of a con-
dition, notwithstanding the provision in the policy
requiring a writing, is a question of fact." In *Berry
v. Insurance Co.*, *supra*, it was said of general agents,
who issued the policy there in question, and who had
authority to make contracts without reference to the
home office, that their power to waive conditions in
the policy was co-existent with that of the company
itself. There is no doubt that a party to a contract
may waive a stipulation or condition made in his favor.
The provisions in question in this case, and the
requirement that notice and proofs of loss shall be
furnished within the time fixed by the policy, are for
the benefit of the defendant, and could have been
waived by it. *Insurance Co. v. Norton*, 96 U. S. 234.

It is the general rule that an agent has power to
bind his principal by doing whatever is necessary and
proper in the discharge of the duties of his agency, and
that frequently includes the right to waive provisions

of a contract. *Machine Co. v. Brower*, 88 Iowa, 613; *Warder v. Robertson*, 75 Iowa, 585; *Pitsinowsky v. Beardsley*, 37 Iowa, 14. That rule has been applied frequently to agents of insurance companies empowered to adjust losses. This court held, in *Stevens v. Insurance Co.*, 69 Iowa, 662, of an agent who was authorized to adjust a loss, and to do whatever might be necessary in its adjustment, that he had the power to determine whether a written notice of loss required by the policy should be given, and to waive a provision of the policy that the company should not be bound by the acts or declarations of its agents, not contained in the policy. It was also said that "the authority to waive that provision is necessarily included in the power conferred upon him with reference to the adjustment of the loss." See, also, *Brown v. Insurance Co.*, 74 Iowa, 431. In *Searle v. Insurance Co.*, 152 Mass. 263 (25 N. E. Rep. 290), it was said, of an agent, that if he could be considered the general agent of the company authorized to represent it in settling the loss there in question, "he would have had, as a necessary incident, the power to dispense with those stipulations for the benefit of the company which had reference to the mode of ascertaining the liability and limiting the right of action,"—citing *Little v. Insurance Co.*, 123 Mass. 388. See also *Insurance Co. v. Dowdall*, 159 Ill. 179 (42 N. E. Rep. 606); *Berry v. Insurance Co., supra; Insurance Co. v. Hayden*, 90 Ky. 46 (13 S. W. Rep. 585); *Rokes v. Insurance Co.*, 51 Md. 512; 1 Beach, Ins., section 566. There can be no doubt that Bliven was authorized to waive the requirements of the policy and the statute in regard to the notice and proofs of loss, and that he could appoint agents and confer upon them the power to do the same. In the adjustment of all losses in his department he stood for and fully

represented the defendant, and had the right to waive any requirements in regard to proofs of loss which it could have waived. He had the right to indorse on the policy a waiver of such requirements, and he also had the power to waive such indorsement. *O'Leary v. Insurance Co.*, 100 Iowa, 390. The case of *O'Leary v. Insurance Co.*, 100 Iowa, 173, involved the right of the secretary and general agent of an insurance company to consent to additional insurance without indorsing the consent on the policy. That in terms required such consent to be so indorsed, and provided that no agent of the company had any authority to waive any of its conditions. We held that the secretary of the company was an agent of the company, within the meaning of its policy, and that a waiver of the provision requiring the indorsement upon it of the consent for additional insurance was not established. Our conclusion was, in substance, that the mere fact that the officer in question was the secretary, and a general agent of the company, did not show that he had the right to waive the condition of the policy specified, and that, if he possessed that right, it should have been proven, in order that what he did should be given the effect of a waiver. We did not say that the condition could not be waived by an agent. The policy considered in the case of *Kirkman v. Insurance Co.*, 90 Iowa, 457, provided that no officer, agent, or employe of the insurance company, excepting the secretary, should waive any of the conditions of the policy, and that he could do so only in writing. We held the provision valid, but refrained from determining whether it would have prevented a waiver by the president of the company. Some claim was made that an agent known as an "adjuster of losses" waived proofs of loss, but that policy differed from the one in suit, in that

it designated the officer by whom a waiver could be made, and if that power could have been delegated it did not appear that the agent had been authorized to exercise it. The policy considered in *Zimmerman v. Insurance Co.*, 77 Iowa, 686, provided that changes could be made or privileges granted only by managers of the company in Chicago, and that provision was held valid. The case of *Taylor v. Insurance Co.*, 98 Iowa, 521, involved a question of waiver, based upon the knowledge of the local recording agent, through whom the company acted in making the contract of insurance. The policy contained provisions similar to that in controversy. After the policy was issued, concurrent insurance in another company was obtained without the indorsement of written consent. We held that notice to the local agent, after the policy was issued and his duties with respect to it were at an end, did not affect the company, and that he did not have authority to waive the conditions of the policy. We said that the condition was valid, but its application in a case like this was not considered, nor did we determine that it could be waived only in writing.

There is a difference between the effect of a provision which forbids a change or waiver by any officer or agent of an insurance company and one which provides that a change or waiver can only be made by a designated officer or agent. We are not to be understood as holding that, if a policy provides that a waiver may be made only by an officer or agent designated, it can be made by none other, for it may happen that the power conferred upon an agent not so designated necessarily includes the power of waiver, and that is especially true of an agent who is authorized to adjust losses. If he investigate a loss, and agree with the assured as to its amount, the

rights of the parties are thereby determined, and further proof would be wholly useless and without effect. In this case Bliven directed Miller to "adjust" the loss in question. Miller could not give the matter his personal attention, and turned it over to Wernimont. His action in so doing was expressly approved by Bliven. To adjust an unliquidated claim is "to determine what is due; to settle; to ascertain." 1 Am. & Eng. Enc. Law (2d ed.) 641. Or, as defined in Webst. Dict., it is "to settle or bring to a satisfactory state, so that parties are agreed in the result." See, also, 1 Bouvier, Law Dict. The definitions thus given are applicable to losses arising under policies of insurance. When they are adjusted, they are ascertained and determined. Therefore, the direction to Wernimont to adjust the loss included the power to waive formal proofs. The defendant must be charged with the knowledge which he acquired while acting for it. He knew that the loss was honest and total. He knew that the plaintiffs were ready to make the required proofs, and that they failed to do so in consequence of his representations that he had all the proofs which the defendant required. He had all the proofs which he asked for, and forwarded them to the defendant. With constructive, if not actual, knowledge of all these facts, the defendant did not inform the plaintiffs that formal proofs were not waived, nor demand them. We think the jury was fully authorized to find that they were waived by Bliven, and that he also waived the written indorsement required by the terms of the policy.

II. What we have said disposes of the controlling questions in the case. The defendant complains that certain letters were introduced in evidence, especially some which were written by its agents more than sixty days after the loss occurred. We think that they were properly received, as

showing the history of the negotiations between the parties, or as containing statements in the nature of admissions or declarations of fact, made by agents in the line of their duty, which were competent evidence against their principal. *Bartlett v. Insurance Co.*, 77 Iowa, 156. Letters which did not fall within these classes were clearly without prejudice. Objections are made to portions of the charge to the jury. It may be that they were faulty in some respects, but, if so, the defects were unimportant. Complaint is made of certain special findings. They are not in conflict with the general verdict, and do not show that it was the result of an erroneous finding of fact; hence we need not determine whether they are supported by the evidence. We have given this case much careful study, but do not find that the district court committed any error prejudicial to the defendant. The verdict is fully sustained by the evidence, and the judgment is AFFIRMED.