BERT JONES, Appellee, v. AUTOMOTIVE INSURANCE COMPANY, Appellant.

**EVIDENCE:** Opinion Evidence—Competency. One who has a general
1 knowledge of the selling price of automobiles of a certain make, is qualified to testify as to the value thereof.

**INSURANCE:** Proof of Loss—Waiver. Evidence reviewed, and held
2    to present a jury question on the issue of waiver of proof of loss
by a denial of liability.

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY, Judge.

### MARCH 11, 1924.

ACTION upon an insurance policy. Jury trial. Verdict for
plaintiff. Defendant appeals.—*Affirmed.*

*Sullivan & Sullivan* and *Fitzpatrick, Barrett & Barlow,* for
appellant.

*J. E. Williams,* for appellee.

PRESTON, J.—1. Some question is made as to the value of
the car. Defendant's testimony tends to show the value at from
$500 to $750. It was insured a few days before the fire for
$1,200. It was practically new, and in good con-
1. EVIDENCE: opin-
ion evidence:    dition. The price for a new car was $1,900.
competency.      Plaintiff purchased it for $1,650, two $400 notes,
and another car. Plaintiff made some expenditures thereafter
for its betterment. Evidence for plaintiff tends to show that
it was worth, at the time of the fire, from $1,200 to $1,650, and
not to exceed $50 after the fire. Plaintiff himself testified that he
was a farmer, and had owned other cars prior to this; testified
to his purchase of this car, and described it. He said he had had
opportunity of 'seeing cars bought and sold of a similar kind;
that he knew quite well what they were being bought and sold
for on the market,—not exactly, but knew almost,—could not
say definitely; that, in driving into the towns, he would inquire
what they were being sold for; that he kept in touch with about
what cars of similar kind were selling for, around the garages
where they have them.

"I would say I knew about what the reasonable market
value of a similar car to mine was in this county at the time.
In my judgment, this car was worth $1,600 or $1,700."

The verdict was for $1,200 and interest. We are of opinion
that sufficient foundation was laid for the opinion of plaintiff.
There were other witnesses on behalf of plaintiff, who placed

the value at practically the same. Clearly, this was a jury question, and the finding has sufficient support.

2. One of the conditions of the policy was that failure on the part of the assured to render a sworn statement of loss to the company within 60 days should render the policy void. Proofs of loss were not given. This was pleaded as a defense. Plaintiff pleads a waiver, alleging that, on November 8, 1921, the next day after the fire, he orally notified Whipple, an employee of the local agents for defendant in Mason City, of his loss and damage. Whipple wrote and delivered policies. Plaintiff procured this policy from Whipple. Plaintiff pleads that, about a week after the first notification to Whipple, J. H. Bunton, special agent for defendant, notified plaintiff that the company would not pay a dime, and told plaintiff to do as he "had a mind to" about it. Thereupon plaintiff brought suit, and relies upon a waiver. Defendant denies that Bunton had authority to adjust losses or deny liability, and denies that he did deny liability. Warner was secretary of the company. The trial court instructed, in substance, that, if the jury should find that the secretary, Warner, stated to the plaintiff that Bunton would take care of or attend to plaintiff's said loss, and thereafter, within 60 days after said fire, said Bunton stated to plaintiff in the presence and hearing of said Warner that the defendant company would not pay any sum whatever to plaintiff because of said loss, substantially as claimed by plaintiff, then such facts would amount to a waiver on the part of the defendant company of the requirements in said policy in reference to formal written proofs of loss, and would excuse the plaintiff from filing same within 60 days after the fire, as required by the policy. If the jury should so find, the verdict should be for plaintiff, but, if they failed to so find, then plaintiff had failed to prove his right to recover, and the verdict should be for the defendant. Plaintiff's evidence tends to show that, about a week after plaintiff first reported the fire to Whipple, he saw Bunton, who was a special agent for the defendant, in the M. B. A. Building at Schanke's office, where defendant maintained its offices. Schanke was president of defendant company. Whipple had sent plaintiff to the company, to see Bunton. Plaintiff had a talk with Bunton about his loss,

*2. INSURANCE: proof of loss: waiver.*

and Bunton told him he would get out in three or four days and look the matter over. That was all that was said that day. About ten days thereafter, plaintiff saw Bunton again at the same place, at which time Bunton said that, in two or three days, he would go out and look things over and get things straightened up. Two or three weeks afterwards, plaintiff saw Bunton again, and asked him to come out and adjust the loss, and at this time, Bunton told him that the company would not pay a dime, etc. Plaintiff's evidence tends to show that, at the first interview with Bunton at the office of defendant company, Warner, the secretary, was present when Bunton talked with Warner about plaintiff's loss, and that Warner told Bunton to go ahead and take charge of it; that, at the third interview with Bunton, when Bunton said the company would not pay, Warner was present; that, the first time plaintiff saw Bunton at the office of defendant company, Warner was present, and Jones heard Warner tell Bunton to go ahead and take care of the plaintiff. According to plaintiff's testimony, he did not, at these interviews, know Warner by name, but, during the trial, he learned that it was Warner, and that it was the same man he had seen in the office.

Appellee cites *Teasdale v. City of New York Ins. Co.*, 163 Iowa 596, and a number of other cases, to the proposition that a denial of liability waives the requirement as to furnishing proofs of loss. Also, *Washburn-Halligan Coffee Co. v. Merchants' B. M. F. Ins. Co.*, 110 Iowa 423, and another case, to the point that a stipulation in the policy that no agent or officer shall have the power to waive conditions relates to the conditions and provisions of the policy as affecting its force as a contract, and not to the conditions to be performed after the loss. Also, *Ruthven Bros. v. American Fire Ins. Co.*, 102 Iowa 550, to the proposition that an agent authorized to adjust losses has also authority to waive any requirements of the policy in regard to loss, and may thus waive any stipulation in the policy that its conditions can only be evaded by indorsement thereon in writing. And finally, that a special agent to whom an insurance company refers the settlement of a loss under a policy of fire insurance has authority to waive a condition as to furnishing

verified proofs of loss within a specified time.  *Teasdale v. Ins. Co.,* supra.

We do not understand appellant to seriously dispute these propositions.  Their claim is that there is no competent evidence in the record to sustain the allegations of the petition, or that the defendant or any authorized agent denied liability and thereby waived the provisions of the policy issued as to proofs of loss; and that, therefore, it was error on the part of the court to overrule defendant's motion for a directed verdict.  *Meyer & Bros. v. Houck,* 85 Iowa 319, *George v. Iowa & S. W. R. Co.,* 183 Iowa 994, and other like cases are cited on this point.  The only cases cited are on this point.

We take it, the real gist of appellant's contention is that Bunton did not tell plaintiff that the company would deny liability, or that they would not pay anything on his claim, and that he so said in Warner's presence, and that the secretary, Warner, did not hear such statement, if it was made.  We are of the opinion that there was such a conflict in the testimony as to these points as to present a jury question.  True, Bunton denied telling plaintiff that the company would not pay, as before set out.  He testifies that, the first morning plaintiff came into the office, Mr. Warner was in the office; that he does not remember that Warner spoke to either Jones or himself during the time plaintiff was there.  Warner testifies that he was secretary and manager of defendant company.

"Only saw plaintiff after this claim arose; *had no personal acquaintance with him;* never had any conversation with him that I recall.  I recall the incident Mr. Jones came to the office and asked for Mr. Bunton, and Bunton either stood there or was just outside, and I said, 'This is Mr. Bunton,' and they carried on a conversation.  I don't believe I can recall a single word that was said between Mr. Bunton and Mr. Jones; paid no attention to the conversation between them.  Don't know whether he thought I was Bunton or the other man.  He came in and asked for Mr. Bunton.  There was nothing stated in my presence or hearing that the company would not pay a cent to Jones for his loss by Bunton."

Plaintiff testifies, partly on recall, after he had learned the name of Warner, as to his going to the company's office, as before

set out, and that Whipple sent him there, and that he went to see Bunton; that he did not know Warner by name, but that during the trial Warner was pointed out to him; and that he saw Warner at the time of his first interview with Bunton.

"Q. Now, at that first interview with Mr. Bunton, when you first met him, did you have a talk in there with him? A. Yes. Q. And prior to talking with you, did you see him in consultation with anybody else? A. He talked to this man Mr. Warner, as I remember it. Q. And did you hear anything which Mr. Warner said to him at that interview? A. He told him to go ahead and take charge of this, or something to that effect. That was the time I had gone there from Whipple direct. Whipple had sent me to Schanke's office to see Bunton, who said he would take care of it for me. At the first interview with Bunton there was nothing said with reference to proofs of loss, nor at any of the interviews with Bunton. Did not see Warner the second time I was at the company's office. The third time, Warner was there. During the conversation, Warner was three or four feet from me. At that time, Bunton said he would not pay a dime. We had a little argument there. He said he wouldn't pay me, and I went to see an attorney. When he made that statement, Warner was there. Q. Did you notice whether he was attending to the conversation and listening to you and Mr. Bunton? A. He was, yes; I think he was; he was looking at us anyway."

Referring again to the first conversation, plaintiff testified:

"Q. State whether or not there was anything said by Mr. Bunton, or by Mr. Warner that morning in your presence to Mr. Bunton, as to whether Bunton was to adjust your loss. A. He told him to go ahead and take care of me; that is what was said."

On cross-examination:

"Q. You went over the matter, and since you left the witness stand yesterday, you first learned who Warner was? A. I didn't know the name. Before I left the witness stand, I did not know his name. I knew who he was by his face. I remember his face as the man I saw in Schanke's office."

We have set out the evidence somewhat fully on this point, and we are of opinion that there was a jury question as to whether Warner directed Bunton to take charge of the matter

of adjusting the loss, whether Bunton denied liability, and whether Warner was present and heard these conversations. There was more than a mere scintilla of evidence, so that the rule in the *Meyer* case does not apply. As bearing on the last mentioned proposition, the jury had a right to take into consideration all the circumstances, the closeness of Warner to the other two, and so on. As somewhat analogous, see *Dale v. Colfax Consol. Coal Co.*, 131 Iowa 67, 71, where the question was as to whether the conductor heard statements of other persons on a car when plaintiff was in a dangerous situation, and thereby the employees had knowledge of his danger. See, also, *Scott v. Chicago, R. I. & P. R. Co.*, 160 Iowa 306, 325; *Monson v. Chicago, R. I. & P. R. Co.*, 181 Iowa 1354, 1374.

There is no prejudicial error, and the judgment is— *Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.