MELVIN ECKARD, administrator of estate of JERRY ECKARD, deceased, and KEITH ECKARD, a minor, by his next friend, MELVIN ECKARD, appellants, v. WORLD INSURANCE COMPANY, OMAHA, NEBRASKA, appellee.

No. 49704.

(Reported in 96 N.W.2d 454)

MAY 5, 1959.

George R. Ludeman, of Mason City, for appellants.

Westfall, Laird & Burington, of Mason City, for appellee.

HAYS, J.—The Hanlontown Consolidated School had an Individual School Accident Insurance Policy, issued by the World Insurance Company of Omaha, Nebraska, under which students at the school were covered to the extent and under the conditions therein set forth. This action is to recover on the policy for the death of one student and for injuries to another. The actions were consolidated under rule 23, R. C. P. The trial court, at the close of plaintiffs' evidence, held as a matter of law there was no coverage under the terms of the policy and directed a verdict for the defendant. Plaintiffs have appealed and the sole issue presented goes to the correctness of this ruling of the trial court.

The contract or policy of insurance, so far as material here, provides:

"*Coverage:* The benefits herein provided are payable for injuries or loss of life as a result of accidental bodily injuries received by the Insured during a regular term of school:

"C. *While Traveling*

"(2) directly to or from extracurricular, nonsocial activities (other than as a spectator) sponsored and supervised by the Policyholder."

It is conceded that the policy was in force at the time in question and that the two students were covered therein to the extent of its terms and conditions.

The record shows that Jerry Eckard and Keith Eckard were members of the Hanlontown school's basketball squad. In March of 1957, while returning home from attending the Iowa State Basketball Tournament in Des Moines, Iowa, they were in an automobile accident, as a result of which Jerry died and Keith was injured. It further appears, from the testimony of the superintendent of the Hanlontown school, that for some years it had been the policy of the school to send the basketball team to the state tournament. The school arranged for transportation and tickets to the tournament and the trip was under the supervision of the coach. The coach, as a witness, testified that the school's basketball schedule includes the state tournament and at the start of the season the members of the squad were told that the first twelve players would be taken to the tournament. He further testified:

"They go, whether they are in the tournament or not, as a reward for the boys, and also to derive some benefit out of watching the better teams in the state play, possibly to increase their desire to reach the finals in the state tournament series; to increase their interest in athletics in their own school, to increase their desire to come out for basketball."

It further appears that, during and after the games, matters of basketball technique were discussed by the coach and the members of the team attending.

I. Both parties contend that the policy of insurance is clear and unambiguous and state that its construction and interpretation is for the court, yet each places an entirely different interpretation thereon.

Appellants contend that the policy requires the *traveling* to be sponsored and not the activity of the tournament itself; that the group went, not as mere spectators alone, but as part of a school program.

Appellee asserts the policy requires that the state tournament be (1) a nonsocial event, (2) it must be sponsored and supervised by the Hanlontown school and (3) plaintiffs must have attended as participants and not as spectators.

In 53 Am. Jur., Trial, section 250, it is said, "Generally, the interpretation or construction and the meaning and legal effect of written instruments are matters of law for the court. This is true where the language used is not technical, where the words are clear, unequivocal, unambiguous, or so plain as not to require extrinsic evidence, and where no question arises as to the use of words of art." 88 C. J. S., Trial, section 217, states the rule as follows: "The interpretation of a written instrument is for the court, but when its meaning is uncertain or ambiguous, the question of its meaning should be left to the jury under proper instructions." See also Rice v. Sioux City Memorial Park Cem., 245 Iowa 147, 60 N.W.2d 110; Service Life Ins. Co. v. McCullough, 234 Iowa 817, 13 N.W.2d 440, 153 A. L. R. 697; Hiatt v. Travelers Ins. Co., 197 Iowa 153, 197 N.W. 3, 33 A. L. R. 655.

The trial court held the terms of the policy were clear and unambiguous, that "in order to be within the coverage of the policy, it would be necessary for the insureds to be partici-

786

pating in some school activity in the City of Des Moines sponsored and supervised by the Hanlontown school." We think such is the clear meaning of the policy. However, the trial court then proceeded to determine from the evidence offered that there was no coverage. We think there was a fact question requiring submission to a jury.

II. The policy requires that the traveling be "to or from extracurricular, nonsocial activities." The term "extracurricular" is generally recognized to mean, "of or pertaining to activities, as debating, dramatics, and athletics, which form part of the life of students, but are not part of the regular course of study." See Webster's International Dictionary. However, the term is all-inclusive and whether or not, in a specific instance, an activity is "extracurricular" is a question of fact that may depend upon the policy of each individual school.

In the instant case it is true that the destination of the trip was attendance at the State Basketball Tournament and that the Hanlontown players were not participants, as players, in the tournament. However, there is evidence in the record from which a jury might find that the trip itself, including the attendance at the tournament, was, as to the Hanlontown school, an "extracurricular" activity. That the trip was sponsored and supervised by the school must be conceded.

The policy also requires that the activity be "nonsocial" and that any student attending must do so "other than as a spectator." Webster defines "spectator" as "One who looks on or beholds; esp., one witnessing any exhibition, as a play." That the students in question were spectators, in that they were witnessing an exhibition, must be conceded. This would be true of the members of all the teams actually participating in the tournament except when in actual competition. While not so holding, we have grave doubts as to the participating members being deemed "spectators" within the terms of the policy. Merely observing the play as a social or recreational pursuit would not be their purpose in attending, so far as the school sponsorship was concerned. It should be noted that the policy says, *other than* as spectators." In Lever Bros. Co. v. Erbe, 249 Iowa 454, 460, 87 N.W.2d 469, 473, the words "other than"

were held to be words of varied meaning. They may mean "except" or "to the exclusion of", and may also mean "in addition to" or "different from."

█ Applying the rule announced in Hiatt v. Travelers Ins. Co., 197 Iowa 153, 156, 197 N.W. 3, 4, 33 A. L. R. 655, that "if the language [of the policy] is, without violence, susceptible of two interpretations, that one which will sustain his claim and cover the loss must, in preference, be adopted over that construction which will prove fatal thereto", we think the jury, under proper instructions, might find under this record that the attendance at the tournament was for the purpose of some beneficial gain to the school as a whole, with the fact that the students were allowed to enjoy watching the play being incidental; that in addition to being spectators they were there for a definite school purpose, and thus not barred under the words "other than as spectators."

For the reasons above-stated the case should have been submitted to a jury, and the directing of a verdict for defendant at the close of plaintiffs' evidence was erroneous.—Reversed and remanded.

GARFIELD, GARRETT, LARSON, OLIVER, PETERSON, and THORNTON, JJ., concur.

THOMPSON, C. J., concurs in the result.

BLISS, J., takes no part.