BURTON B. JERREL et ux., appellees, v. HARTFORD FIRE INSUR-
ANCE COMPANY, appellant.

No. 49929.

(Reported in 103 N.W.2d 83)

MAY 3, 1960.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellees.

THORNTON, J.— At the outset, plaintiffs urge defendant, in its (appellant's) Brief and Argument, has not complied with rule 344(a)(3), Rules of Civil Procedure, and no question is presented for review. While there is not a strict compliance with the rule, the errors relied on are sufficiently clear that neither counsel for plaintiffs nor this court has been misled. We will pass on the merits where prejudice, if any, to appellee is slight. Agans v. General Mills, Inc., 242 Iowa 978, 48 N.W.2d 242, and McBeth v. Merchants Motor Freight, Inc., 248 Iowa 320, 79 N.W.2d 303.

Plaintiffs, Burton B. Jerrel and Dorothy P. Jerrel, are husband and wife, the sole stockholders of Inter-State Film Corporation at the time such corporation went out of business, and the only partners in a partnership known as Tele-Visual Productions at the times pertinent. For convenience they will be referred to in the singular.

Plaintiff purchased from defendant two personal property floater policies, the first June 5, 1953, for a term of three years,

the second June 5, 1957, for a term of one year. Both policies were identical except for effective dates. Each purported to insure all unscheduled personal property owned by plaintiff and members of his family in the same household while in all situations, except as otherwise provided, against all risks of loss or damage, except as otherwise provided, up to the amount of $7000. The policies contained a business property exclusion clause which reads as follows:

"6. EXCLUSIONS—This policy does not insure: * * *

"(b) unscheduled property pertaining to a business, profession or occupation of the persons whose property is insured hereunder, excepting professional books, instruments and other professional equipment owned by the Assured while actually within the residences of the Assured; * * *."

The meaning of the above clause is the question for decision common to both policies, the second question is whether there was sufficient evidence of waiver of the suit clause providing action must be commenced within 12 months of the discovery of the loss by the insured to submit such to the jury, and relates to the first policy only.

Plaintiff's action is in two counts against defendant, insurance company. The first count is on the first policy for loss by fire on March 7, 1956, of certain abstracts of title, not in dispute here, and for 150 to 190 reels of film known as Iowa News Flashes. The second count is on the second policy for loss by fire on July 8, 1957, for newsreel films known as Teletopics Pro Football, Southland News Reel, and Iowa News Flashes. For answer to each count defendant denied coverage and as to Count I pleaded the suit clause that the action started on September 27, 1957, was not within the 12 months after discovery of the loss. Plaintiff in reply pleaded defendant by its conduct had waived the 12-month suit clause. Both counts were submitted to the jury and a verdict rendered for plaintiff of $7000 on each count, a total of $14,000. Defendant's motions for a new trial and judgment notwithstanding the verdict were overruled and it appeals raising the questions as above specified.

I. The evidence from which the jury could find the reels of film did not pertain to a business of plaintiff is as

follows: From 1935 to 1943 Inter-State Film Corporation produced and distributed for advertising purposes Iowa News Flashes in theatres throughout Iowa. The corporation went out of business in 1943 because the U. S. Air Service Command took over all of its equipment and film could no longer be obtained due to the war effort at that time. The only remaining tangible assets of the corporation were the Iowa News Flashes. Plaintiff as sole stockholder took over the reels of film on dissolution or going out of business of the corporation. During the time the corporation was operating, the reels when not otherwise in use were stored in a film vault at Twelfth and Woodland in Des Moines. From 1943 to 15 months before the first fire the Iowa News Flashes remained in the film vault and no use whatsoever was made of them. Fifteen months prior to the fire plaintiff took them to the Tele-Visual Productions office to screen the same and sell them if possible. At no time from 1943 to the date of the fire were such films shown in any theatre. Plaintiff and an employee who performed general office work for Tele-Visual Productions from 1947 to July of 1956 testified Iowa News Flashes were not used in the production of film by Tele-Visual Productions. The rental on the storage vault at Twelfth and Woodland was first paid by the corporation, then for a year or so by plaintiff individually and after the formation of the partnership, Tele-Visual Productions, by such partnership.

Tele-Visual Productions was formed in 1944 and from then until the first fire, March 7, 1956, produced and distributed to theatres over the nation two films, Teletopics Pro Football and Southland News Reel. The reels of such films not in actual use were stored in the film vault. These films with Iowa News Flashes remaining in the vault were destroyed in the second fire. This fire took place at the film vault at Twelfth and Woodland on July 8, 1957. Plaintiff's testimony is the first fire at the office of Tele-Visual Productions not only destroyed the Iowa News Flashes, recovery for which is sought in Count I, but that such fire totally destroyed everything in the office and put plaintiff out of business permanently. He has not engaged in any business since that fire.

Plaintiff contends the Iowa News Flashes have not pertained to a business since Inter-State Film Corporation went out of business in 1943 and Teletopics Pro Football and Southland News Reel did not pertain to any business after the first fire.

Defendant contends the words of the exclusion taken in their plain, ordinary and popular sense are unambiguous, and broad enough to exclude the films from coverage. It also contends the parties did not intend the same to be covered. To sustain the contentions of defendant it is necessary that we hold as a matter of law the films pertained to the business of plaintiff at the times of the losses.

Business in its plain ordinary sense is an activity carried on for profit and includes buying or producing for sale to customers. Webster's New International Dictionary, Second Ed., also see Volume 5, Words and Phrases, Perm. Ed., "Business", page 970 et seq. And it follows a person may own one article for such purpose and another similar article which has no connection with his business. Here the exclusion clause provides, "* * * pertaining to a business * * * of the persons * * *." In Webster's New International Dictionary, Second Ed., we find, in significant part, in the definition of "pertain" the following: "* * * often with extended signification in the phrase *pertaining to,* belonging to in an essential or any attendant relationship; characteristic of; peculiar to; connected with; relating to; appropriate to."

It seems clear on the date of the first fire we cannot hold as a matter of law the Iowa News Flashes had any essential or attendant relationship with the business of Tele-Visual Productions, the business of plaintiff at that time. The business then dealt only with Teletopics Pro Football and Southland News Reel films. The mere presence of 150 to 190 reels in the business office of plaintiff does not make them part of the business. Such presence was in no way shown as pertaining to the business of plaintiff within Webster's definition above set out. Likewise on the date of the second fire, July 8, 1957, there is not sufficient evidence of a business of plaintiff to which any of the films could pertain for us to so hold as a matter of law. Submission

of this issue to the jury was as favorable to defendant as the terms of the exclusion clause and the facts entitled it. See Eckard v. World Insurance Co., 250 Iowa 782, 96 N.W.2d 454.

Another argument of defendant is that the plain intention of the parties shows the news reels were not intended to be covered. If there is an ambiguity in the policy it appears at this point. The policy provides:

"1. PROPERTY COVERED—Personal property owned, used or worn * * * while in all situations, except as hereinafter provided. * * *

"3. AMOUNTS OF INSURANCE—Insurance attaches only with respect to those items in this paragraph for which an amount is shown and only for such amount. * * * (a) $7,000.00—On unscheduled personal property, except as hereinafter provided. * * *

"7. The following are the approximate values of the unscheduled personal property, other than jewelry, watches and furs, as estimated by the Assured, at the time of issuance of this policy: * * *."

Then there are listed (a) through (n) personal property ordinarily found in or around the home and after each lettered item is a valuation filled in under a heading "Wherever Located." Item (o) is as follows: "All other personal property (including wines, liquors, foodstuff, garden and lawn tools and equipment, trunks, traveling bags, children's playthings, miscellaneous articles in basement and attic) * * *" and the value given is $500. The total of all the approximate values is $8750 or $1750 in excess of the amount of the coverage. Both policies contained identical amounts in these respects. The purpose of paragraph 7 is not clear, it does not contain one word qualifying the coverage in paragraphs 1 and 3, and defendant does not point out wherein paragraph 7 limits the plain language of paragraphs 1 and 3. Its claim of intention is based on the difference in value of the news film as testified to by plaintiff and the amount of the policies, and that plaintiff never mentioned them to defendant's agent. If coverage is intended to be limited to the property listed in paragraph 7 it must do so plainly and clearly. The intent as expressed in paragraphs 1

822

and 3 is to cover all personal property owned by plaintiff to the extent of $7000 and not excluded, and the only possible applicable exclusion clause is the business property exclusion set out above.

Contracts of insurance must be construed according to the terms and language used by the parties. See discussion on interpreting insurance contracts in Langlas v. Iowa Life Ins. Co., 245 Iowa 713, 63 N.W.2d 885, starting at page 715 of 245 Iowa and page 887 of 63 N.W.2d, and authorities therein cited.

In considering the business property exclusion clause we have carefully considered the authorities relied on by appellant. In Swanstrom v. Insurance Co. of North America, 1951, 100 F. Supp. 374, 375 (D.C. S.D. Cal.), also cited by plaintiff, the United States District Court had before it the same business property exclusion clause as is before us. The court there held objects of art and antiques owned by plaintiff, a collector of such, and placed by her in her restaurant and at the time of the loss being used in the decoration and adornment of the restaurant were excluded from coverage. In the course of his decision the District Judge said, "* * * I can agree that the intention of the defendant was probably to make the clause as broad as possible in its exclusion. However, clearly it would not exclude everything owned by one in business. It is the ownership of the insured plus some connection with the business which excludes the property from coverage. It is this last element that distinguishes the excluded from the covered unscheduled property. * * * It is the character of the use not the nature of the property that is determinative of the coverage or exclusion. * * *." This case supports our conclusion.

In Automobile Insurance Co. of Hartford v. Denny, 1953, 8 Cir., 206 F.2d 401, 40 A. L. R.2d 865, the court held the word "jewelry" as used in the policy was used in a broad sense and included mounted and unmounted diamonds. This holding is not helpful or contradictory to our holding. Likewise the holdings in Tibbils v. Federal Insurance Co., D.C. Mun. Ct. App., 119 A.2d 114, that a stamp collection did not come within the term "personal effects"; United States Fidelity & Guaranty Co. v. Lairson, Ky., 271 S.W.2d 897, that money did not come within

the term "equipment"; Equity Oil Co. v. National Fire Insurance Co. of Hartford, 1956, 144 F.Supp. 830 (D.C. Utah), that the fire was the result of a blowout and therefore specifically excluded; and Segal v. Aetna Casualty and Surety Co., 85 Pa. Super. 50, that thirty-three suits of clothing, removed from a burned-out store and stored in the garage at insured's house did not come within a policy insuring household and personal property of every description, common in residences generally, upon analysis tend to support the conclusion we reach here.

II.   The evidence on waiver of the 12-month suit clause is as follows: Plaintiff had for a number of years purchased insurance from LaMair-Mulock Company, a general insurance agency incorporated in Iowa. It was a resident agent, selling and servicing policies for defendant, and using a Hartford letterhead in correspondence with plaintiff. Mr. T. M. Bannister was a vice-president of this company and handled the insurance sold to plaintiff. Plaintiff's prior claims had been handled through the office of LaMair-Mulock. Plaintiff had reported losses and received checks signed by the companies through such office. The only contact of plaintiff with defendant was through Bannister as vice-president of LaMair-Mulock, and later with an adjusting firm. At the time of the first fire, March 7, 1956, all of plaintiff's insurance policies were lost in the fire. On March 13, 1956, plaintiff wrote to Mr. Bannister of LaMair-Mulock requesting copies of his policies, in part as follows: "Am wondering if you would please issue duplicate policies on any insurance which we carry with your company, for our present records?" Mr. Bannister replied forwarding information on an office contents policy and advising a copy of a camera floater policy would follow. No mention was made of the personal property floater policy in suit. At the trial, Mr. Bannister gave as his reason for not sending a copy of the policy, that he did not think it was involved. Plaintiff was not aware he had such coverage until in making out income returns early in 1957 he thought of it. He called Mr. Bannister the week of March 4, 1957, and discussed the policy in suit and at that time raised the question of any suit clause in the policy.

Mr. Bannister assured him defendant was a big company and could not rely on technical provisions in fine print about a short contractual limitation of action. Later the claim was referred to the adjusting company by LaMair-Mulock and in conversation with their Mr. L. J. Peckler plaintiff was assured the company would adjust the claim on its merits and not rely on the contractual limitation-of-action clause. Plaintiff testified he relied on and believed both Mr. Bannister and Mr. Peckler when they told him the company would not rely on the suit clause. This is borne out by a letter to plaintiff by Peckler of July 1, 1957, wherein he refers to the defendant-company as giving him certain information of their position, admitting liability on abstracts of title and other items not within the business property exclusion clause and denying liability of reels of film because they did come within the clause, but in no way referring to the 12-month suit clause.

Defendant urges the policy contains a provision, "* * * nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy", which precludes LaMair-Mulock Company, Mr. Bannister or Mr. Peckler of the adjusting company from waiving the 12-month suit clause, and there is insufficient evidence of the agents' authority or apparent authority to waive the suit clause.

██ The 12-month suit clause is valid. Harrison v. Hartford Fire Ins. Co., 102 Iowa 112, 71 N.W. 220, 47 L. R. A. 709, and Wilhelmi v. Des Moines Ins. Co., 103 Iowa 532, 72 N.W. 685. The policy provision requiring waivers to be in writing does not apply to conditions to be performed after loss, in this case the 12-month suit clause. Washburn-Halligan Coffee Co. v. Merchants Brick Mutual Fire Ins. Co., 110 Iowa 423, 81 N.W. 707; Ruthven Brothers v. American Fire Ins. Co., 102 Iowa 550, 71 N.W. 574; Rowe v. Stufflebeam, 249 Iowa 985, 89 N.W.2d 875; 45 C. J. S., Insurance, section 701, page 667; and annotation, 29 A. L. R.2d 657.

██ The provision in the policy may be waived by an agent having actual or apparent authority. Washburn-Halligan Coffee Co. v. Merchants Brick Mutual Fire Ins. Co., supra; Ruthven Brothers v. American Fire Ins. Co., supra; Jones v. Automotive

Ins. Co., 197 Iowa 513, 197 N.W. 448; and Bish v. Hawkeye Ins. Co., 69 Iowa 184, 28 N.W. 553; and these same authorities hold an adjustor may have such authority.

■ Here there is ample evidence to submit to the jury the apparent authority of both LaMair-Mulock Company and the adjusting company to act in the entire area of settling claims coupled with the letter of July 1, 1957, from which the inference may be drawn the defendant was fully advised of plaintiff's claim. The case was properly submitted to the jury.

It is not necessary for us to consider the additional grounds urged by plaintiff for affirmance.—Affirmed.

All JUSTICES concur except BLISS and OLIVER, JJ., not sitting.