203 So.2d 820 (1967)
Jesse L. RIDDLE
v.
ALLSTATE INSURANCE COMPANY.
No. 2738.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1967.
*821 Elsie B. Halford, New Orleans, for plaintiff-appellant.
Lemle & Kelleher, H. Martin Hunley, Jr., New Orleans, for defendant-appellee.
Before McBRIDE, REGAN and BARNETTE, JJ.
REGAN, Judge.
The plaintiff, Jesse L. Riddle, filed this suit against the defendant, Allstate Insurance Company, endeavoring to recover the sum of $804.40, representing the amount which he asserts is due under a policy of insurance issued to him by the defendant covering unscheduled personal property damaged while away from his residence.
The plaintiff also requests that he be awarded the sum of $96.53 as penalties predicated upon the defendant's arbitrary and capricious refusal to recognize his claim, together with attorney's fees to be fixed by us.
The defendant answered and in the course of denying its liability[1] to the plaintiff asserted that his claim fell under an exclusion clause contained in the policy, since it was for personal "property pertaining to a business" and in addition thereto, it alternatively insisted that the plaintiff did not submit satisfactory proof of loss in conformity with the provisions of the contract of insurance.
From a judgment dismissing the plaintiff's suit, he has prosecuted this appeal.
The record discloses that the plaintiff lost certain articles of personal property located both in his home and in his office as a result of water damage which occured during the course of Hurricane "Betsy", which struck the New Orleans area on the night of September 9, 1965.
The liability of the defendant for the items lost while in the plaintiff's home is *822 not involved herein, since a payment therefor in the amount of $179.00 was made prior to the trial hereof.
Only one witness appeared on behalf of defendant insurer, Tay Guilmino, and he laboriously endeavored to assert that this payment covered certain items located in the defendant's office; however, a letter written by him to the plaintiff's attorney which was introduced into evidence clearly revealed that the $179.00 payment received by Riddle was in reimbursement for loss of personal property located in his home. In this letter, the insurer adopted the position that the items in Riddle's office were not included in the $179.00 payment, since they were excluded by virtue of the terms of the policy.
The policy provision which forms the basis of this dispute reads:
"COVERAGE CUNSCHEDULED PERSONAL PROPERTY
"2. Away from premises: This policy also covers unscheduled personal property as described and limited, while elsewhere than on the premises, anywhere in the world, owned, worn or used by an insured, * * * Property pertaining to a business is not covered."
The plaintiff testified that when the loss occurred, he was employed as manager of Godchaux's clothing store located in the Lakeside Shopping Center in Jefferson Parish, Louisiana. He explained that he occupied an office in this store which was furnished with all equipment needed to perform his managerial duties. He then asserted that during the hurricane the roof of Godchaux's establishment was damaged which permitted water to enter therein and to ruin the articles which he new claims the value of under the above quoted policy provision.
The items included two framed pictures valued at $75.00 each; books, including the Bible, works by Norman Vincent Peale, a dictionary, and other volumes; a suit; two pairs of shoes; a desk set; a pen and pencil set; an artificial flower arrangement; a lamp; book ends; and a clock.
The plaintiff initially reported this loss to Godchaux's insurer who advised him to file the claim with his own insurer under his home owner's policy, since the damaged articles were personal in nature and were not business items. He then verbally reported the loss to William J. Dalton of Allstate Insurance Company, within 10 to 14 days of the occurrence thereof. A multitude of claims were being processed at this time due to devastation caused by the hurricane and therefore no adjuster promptly appeared to settle the matter. Several months later, the plaintiff again contacted Allstate, and he was assured by Dalton that while his men were still busy, nevertheless, the plaintiff's claim would be attended to shortly.
Eventually, an adjuster from Central Claims Service, Inc., acting on behalf of Allstate, visited the plaintiff at his office in Godchaux's and was furnished with a list of the items damaged both in the store and in his home. He related that this adjuster never requested permission to inspect the items located in his home, but that the next communication received from Allstate was in the form of a letter stating that he would be paid the sum of $179.00. Included in this letter was a proof of loss form executed in blank with the exception that the figure of $179.00 appeared therein.
The proof of loss was returned to the adjuster's office by the plaintiff, who testified that it was unsatisfactory since it did not itemize what the amount of $179.00 was intended to cover. Thereafter, he spoke with a Mr. Jones and a Mr. Brown of Allstate, in an effort to have them reappraise his claim. They both refused, hence this suit.
To reiterate, there is some conflict as to what was covered by the payment of $179.00 by Allstate to the plaintiff. However, in view of the letter to the plaintiff's *823 attorney in which it was emphasized that the amount of $179.00 covered personal effects lost in the home, we can only conclude that none of the items located in the office have been paid for. A witness for the defendant, Guilmino, laboriously testified that the sum of $179.00 covered the costs of a suit, two pairs of shoes, and a radio, all of which were located in the plaintiff's office, together with the cost of cleaning a mattress located in his home. However, in view of Guilmino's prior letter stating that $179.00 was for personal property located in his home, we are compelled to reach the inevitable conclusion that the suit, the two pairs of shoes, and the radio have not been paid for to this date.
Of course, the initial question which this case has posed for our consideration is whether the items located in Riddle's office were personal property or were they encompassed by the exclusionary clause of the policy which provided that "Property pertaining to a business is not covered".
The litigants herein concede that the only case which has construed language similar to the exclusion clause in this case is Jerrel v. Hartford Fire Insurance Company,[2] in which the Iowa Supreme Court rationalized the phrase "pertaining to a business" as follows:
"Business in its plain ordinary sense is an activity carried on for profit and includes buying or producing for sale to customers. Webster's New International Dictionary, 2nd Ed., also see Vol. 5, Words and Phrases, Perm. Ed., `Business' pp. 970 et seq. And it follows a person may own one article for such purpose and another similar article which has no connection with his business. Here the exclusion clause provides, `* * * pertaining to a business * * * of the persons * * *.' In Webster's New International Dictionary, 2nd Ed., we find, in significant part, in the definition of `pertain' the following: `* * often with extended signification in the phrase, pertaining to, belonging to, as an essential or any attendant relationship, characteristic of, peculiar to, connected with, relative to, appropriate to."
The court further pointed out that business in its plain and ordinary sense is an activity carried on for profit and includes buying or producing for sale to customers.[3]
The plaintiff, as the manager of Godchaux's, did not engage in buying or selling any of the articles which were lost in his office as a result of the hurricane. Therefore, we must decide whether the articles pertained to the business of managing a retail merchandising establishment so as to fall within the purview of the phrase "pertaining to a business".
In construing this phrase, the business in which the person insured is engaged must, of necessity, be considered in all of its ramifications. In this case, the plaintiff as store manager, was supplied with all of the equipment and accoutrements necessary for the execution of his business functions. It is for this reason, we assume that the defendant endeavored to change his position and assert that the plaintiff's suit, shoes, and radio, which were all located in the plaintiff's office and were obviously non-business items, were included in the $179.00 which previously had been paid prior to trial as partial indemnification for the losses sustained by the plaintiff. Extending this reasoning further, we find it difficult to comprehend how book ends, a lamp, plastic flowers, a pen and pencil set, a desk set, and books such as the Bible are necessary in the management of a retail merchandising business. On the contrary, it appears that the plaintiff's assertion that he placed these items in his office to "spruce it up" is readily believable, *824 in view of his obvious desire to enjoy pleasant surroundings during a substantial portion of his waking hours. Moreover, we are convinced that if any one of the foregoing articles was in fact necessary in connection with his management of the store, the company would have gladly furnished it to the plaintiff.
In its brief on appeal, the defendant raises the additional issue that the plaintiff did not prove that his property was damaged by water which entered the building through openings first caused by the wind, as required by the terms of this contract of insurance.
The plaintiff testified that the roof "gave way and opened up" directly over his office, and water poured through the openings thereof. The defendant argues that the plaintiff cannot establish whether the roof gave way from the weight of the water bearing down on it or whether the wind actually caused the damage to the roof. We take judicial notice[4] of the severity of the storm designated by the United States Weather Bureau as Hurricane "Betsy", the winds of which exceeded the speed of 150 miles an hour for sustained periods of time as the storm passed in the vicinity of Godchaux's Lakeside store. In view of the great strength of the winds, the probability that the roof of the Godchaux's establishment collapsed as a result of the weight of water bearing thereon is highly remote. In addition thereto, the plaintiff later visited the scene of the disaster and observed the damage to the store. His testimony stands in the record uncontradicted. In view of these facts, the burden of going forward with the evidence was shifted to the defendant, and it was consequently up to it to show that the roof collapsed from causes other than the force of the winds.
Insofar as the defendant's argument that the plaintiff never submitted a properly executed proof of loss, he has adequately answered this question by pointing out that the law does not require a proof of loss as a condition precedent to payment under an insurance policy when the insurer has refused payment of the loss.[5] In other words, the law did not require him to engage in a vain and useless gesture.
On the other hand, we are convinced that the plaintiff's claim for penalties and attorney's fees for arbitrary and capricious refusal to pay is unwarranted. The facts adduced herein disclose that the articles lost in the plaintiff's office were located there for over a period of two years, and this was one of the yardsticks by which the insurance adjusters determined that the property was encompassed by the exclusionary clause of the policy. In view of this fact, and in view of the ambiguous nature of the exclusionary phrase, and in consideration of the difficulty in determining the applicability thereof to any particular set of facts, we are convinced that the insurer did not act arbitrarily or capriciously in refusing to recognize the claim asserted herein by the plaintiff.
This conclusion is further strengthened by the lack of proof contained in the record as to the actual value of the articles lost by the plaintiff. The testimony in this respect is quite ambiguous and in some instances contradictory. For this reason, in order to effect a more just result between the litigants herein, we are of the opinion that additional testimony should be adduced in the trial court to establish the exact value of the plaintiff's loss. Therefore, we have decided to remand the case to the lower court for the introduction of additional evidence to determine the amount of the plaintiff's loss with that certainty required by law.
*825 For the foregoing reasons, the judgment of the lower court is reversed, and this case is remanded to the lower court for additional proceedings in conformity with the views expressed hereinabove.
The defendant is to pay all costs incurred herein.
Reversed and remanded.
NOTES
[1] For any amount in excess of $179.00 for articles lost in his home which sum had been paid to the plaintiff prior to the trial hereof.
[2] 251 Iowa 816, 103 N.W.2d 83, 80 A.L. R.2d 1281 (1960).
[3] As authority, the court cited Webster's New International Dictionary, 2d Ed., and other sources.
[4] Ebert v. Pacific Nat. Fire Ins. Co., La. App., 40 So.2d 40 (1949).
[5] See Robicheaux v. Calvert Fire Insurance Company, La.App., 171 So.2d 264 (1965); Standard Brass & Manufacturing Co. v. Maryland Casualty Co., La. App., 153 So.2d 475 (1963).